NO. 14-1135

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

99 RESTAURANTS, LLC,

*Petitioner-Appellant,*

v.

CONSTANZA KIRAN, on behalf of
herself  and all others similarly situated,

*Respondent- Appellee.*

APPEAL FROM ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

BRIEF OF PETITIONER-APPELLANT 99 RESTAURANTS, LLC

Michael Mankes, MA Bar No. 662127
mmankes@littler.com
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Telephone: 617.378.6000
Facsimile: 617.737.0052

Burt M. Rublin
rublin@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street
51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.864.8116
Facsimile: 215.864.9783

*Attorneys for Petitioner-Appellant,*
*99 Restaurants, LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to F.R.App.P. 26.1, Petitioner-Appellant 99 Restaurants, LLC states that:

1.     99 Restaurants, LLC is a wholly-owned subsidiary of O'Charley's Management Company, LLC;

2.     O'Charley's Management Company, LLC is a wholly-owned subsidiary of O'Charley's, LLC;

3.     O'Charley's, LLC is a wholly-owned subsidiary of ABRH, LLC;

4.     ABRH, LLC is a wholly-owned subsidiary of Fidelity Newport Holdings, LLC;

5.     Fidelity Newport Holdings, LLC is a majority-owned subsidiary of Fidelity National Special Opportunities, Inc.;

6.     Fidelity National Special Opportunities, Inc. is a wholly-owned subsidiary of Fidelity National Financial, Inc.; and

7.     Fidelity National Financial, Inc. is a NYSE publicly-held company and parent of Fidelity National Special Opportunities, Inc.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.........................................................................ii

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ............................ 1

JURISDICTIONAL STATEMENT.......................................................... 2

STATEMENT OF THE ISSUES .............................................................. 3

STATEMENT OF THE CASE .................................................................. 4

    A.    Kiran's Class Demand for Arbitration................................... 4

    B.    The Arbitration Agreements ................................................. 4

    C.    The Petition to Stay Arbitration Filed by 99 Restaurants.................... 8

SUMMARY OF ARGUMENT.................................................................. 9

STANDARD OF REVIEW...................................................................... 12

ARGUMENT ...................................................................................... 12

    A.    Because of the "Fundamental" Differences Between Bilateral and Class Arbitration, Class Arbitrability is a "Gateway" Dispute Reserved for Judicial Resolution .......................................... 12

        1.    Supreme Court Precedents Strongly Support The Sixth Circuit's Holding That Class Arbitrability Should Be Decided by Courts, Not Arbitrators .......................................... 12

        2.    Kiran's Arguments Against Judicial Determination Of Class Arbitrability Are Unavailing .......................................... 21

    B.    The Parties' Arbitration Agreements Do Not Provide For Class Arbitration.................................................................... 27

CONCLUSION ................................................................................... 34

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*American Express Co. v. Italian Colors Restaurant,*
133 S. Ct. 2304 (2013) .............................................................. 27, 28

*AT&T Mobility LLC v. Concepcion,* 131 S. Ct.
1740 (2011) ........................................................ 10, 13, 18, 19, 20, 28

*AT&T Technologies Inc. v. Communications Workers,* 475 U.S.
643 (1986) ..................................................................................... 15

*BG Group PLC v. Republic of Argentina,* 134 S. Ct. 1198
(U.S. March 5, 2014)............................... 14, 15, 16, 17, 18, 27

*Chassen v. Fidelity National Financial,* 2014 U.S.
Dist. LEXIS 6227 (D.N.J. Jan. 17, 2014) .............................. 19, 20, 21

*Combined Energies v. CCI, Inc.,* 514 F.3d 168 (1st Cir. 2008).............................. 12

*Corrigan v. Domestic Linen Supply Co., Inc.,* 2012 U.S.
Dist. LEXIS 100961 (N.D. Ill. July 20, 2012) .................................... 21

*DeBose v. Smith & Wollensky Restaurant Group, Inc.,* 2013 U.S.
Dist. LEXIS 140323 (S.D. Tex. Sept. 30, 2013)................................ 30

*Fantastic Sams Franchise Corp. v. FSRO Ass'n,* 683 F.3d
18 (1st Cir. 2012) ........................................................ 2, 10, 21, 22, 23

*First Options of Chicago v. Kaplan,* 514 U.S. 938 (1995) .................... 9, 10, 15, 16

*Goodale v. George S. May Int'l Co.,*
2011 WL 1337349 (N.D. Ill. April 5, 2011) ...................................... 21

*Grand Wireless, Inc. v. Verizon Wireless, Inc.,*
No. 13-1149, 2014 U.S. App. LEXIS 5276 (1st Cir. March 19, 2014).............. 12

**Page(s)**

*Granite Rock Co. v. Teamsters,* 561 U.S. 287 (2010)..............................15

*Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444 (2003) .....................24, 25, 26

*Hickey v. Brinker Int'l Payroll Co.,* 2014 U.S. Dist.
    LEXIS 20387 (D. Colo. Feb. 18, 2014) .......................................29, 30

*Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S.
    79 (2002) ................................................9, 10, 11, 14, 15, 16, 17, 18

*Huffman v. The Hilltop Companies, LLC,* 2014 U.S. App.
    LEXIS 5587 (6th Cir. March 27, 2014) ...........................11, 21, 26, 29

*In re A2P SMS Antitrust Litigation,* 2013 U.S. Dist.
    LEXIS 132303 (S.D.N.Y. Sept. 16, 2013).........................................30

*John Wiley & Sons, Inc. v. Livingston,* 376 U.S.  543 (1964)....................16

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) .......................................................................17

*Oxford Health Plans, LLC v. Sutter,* 133 S. Ct. 2064
    (2013) ...............................................9, 12, 13, 15, 19, 20, 24, 26, 27

*Reed Elsevier, Inc. v. Crockett,* 734 F.3d 594 (6th Cir. 2013).........................passim

*Skirchak v. Dynamics Research Corp.,* 508 F.3d 49 (1st Cir. 2007)................23, 24

*Smith v. BT Conferencing, Inc.,* 2013 U.S. Dist. LEXIS 158362
    (S.D. Ohio Nov. 5, 2013) ..............................................................30

*Stolt-Nielsen S.A. v. AnimalFeeds Intl. Corp.,*
    559 U.S. 662 (2010)..................................................................passim

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford
    Junior Univ.,* 489 U.S. 468 (1989)..................................................14

**Page(s)**

**STATE CASES**

*Kinecta Alternative Financial Solutions v. Superior Court,*
    205 Cal.App.4[th] 506, 140 Cal.Rptr.3d 347 (2012) ................................. 11, 31, 32

*Nelsen v. Legacy Partners Residential,*
    207 Cal.App.4[th] 1115, 114 Cal.Rptr.3d 198 (2012) .................................... 32, 33


**FEDERAL STATUTES**

9 U.S.C. § 16(a)(3) ........................................................................................ 2, 8

29 U.S.C. § § 201, *et seq.* ............................................................................... 4


**STATE STATUTES**

M.G.L.c. 149 § 152A ....................................................................................... 4

M.G.L. c. 151 § 7 ............................................................................................ 4

New Hampshire RSA § 279 ............................................................................ 4

## **REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

This appeal presents an important legal issue not previously decided by the Supreme Court or this Court: is the availability of class arbitration a "gateway" question of arbitrability that a court, rather than an arbitrator, should decide? Appellant believes that oral argument would be of assistance to the Court.

## JURISDICTIONAL STATEMENT

This is an appeal from a final decision with respect to arbitration, as the District Court denied the "Petition to Stay Arbitration and to Compel Respondent to Arbitrate Claims on an Individual Basis" filed by Appellant 99 Restaurants, LLC ("99 Restaurants"). (Add. 3 at #12). At the same time that the District Court denied the Petition to Stay, it also marked the case as administratively closed. (Add. 3 at #13). The District Court's Order is appealable under Section 16(a)(3) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(3), which provides that "[a]n appeal may be taken from… (3) a final decision with respect to an arbitration that is subject to this title." In procedurally analogous circumstances, this Court found that it had appellate jurisdiction pursuant to Section 16(a)(3) to review a trial court order that denied a request by a franchisor to stay an "associational action" previously filed against it in arbitration by an association of franchisees: "We interpret the district court's decision as a final decision subject to appeal under 9 U.S.C. § 16(a)(3)." *Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.*, No. 11-2300 (1st Cir.), Order entered on December 23, 2011.

## <u>STATEMENT OF THE ISSUES</u>

1.    In light of the Supreme Court's repeated emphasis on the "fundamental" differences between bilateral and class arbitration, is the availability of class arbitration a "gateway" question of arbitrability that a court, rather than an arbitrator, should decide?

2.    Where an arbitration agreement is silent with respect to class arbitration and instead uses only personal pronouns and refers to the individual "employee" in describing the parties' right to invoke arbitration, should that agreement be construed as allowing only bilateral arbitration?

## STATEMENT OF THE CASE

A.    Kiran's Class Demand for Arbitration

Respondent Constanza Kiran ("Kiran") worked as a server for 99 Restaurants in Salem, New Hampshire from July, 2000 - October, 2012, and in Wilmington, Massachusetts from November, 2012 - May, 2013. (Add. 11 at ¶ 5). On October 30, 2013, Kiran, acting on behalf of herself and all others similarly situated, filed a Class Demand for arbitration with the American Arbitration Association ("AAA") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § § 201, *et seq.*, Massachusetts law, M.G.L. c. 149 § 152A and c. 151 § 7, and New Hampshire law, RSA § 279, related to 99 Restaurants' alleged "tip pooling" policy. (Add. 10 at ¶ 1).    She alleges that she was required to share her tips with dishwashers, in violation of federal and state law. (Add. 11 at ¶ 7). Kiran demanded classwide relief on behalf of all similarly situated servers, seeking recovery of tips, minimum wages, multiple or liquidated damages, interest and attorney's fees and costs. (Add. 10 at ¶ 1; 14-15).    The putative class is comprised of over 6,000 servers who worked across a network of over 100 restaurants in multiple states. (Add. 17 at ¶ 3).

B.    The Arbitration Agreements

Kiran had signed an arbitration agreement with 99 Restaurants on December 3, 2003. (Add. 5; 18 ¶ 5).  The agreement does not make any reference to class arbitration. (Add. 5).  To the contrary, the agreement refers only to the

4

individual "employee" and repeatedly uses the personal pronouns "I" and "my." It does not contain any language authorizing the employee to assert claims in arbitration on behalf of anyone else. The agreement (Add. 5) states in full as follows:

> I, the undersigned party, hereby agree to submit any controversy or dispute arising out of or in connection with my compensation, employment or termination of employment, including but not limited to any statutory claims, such as discrimination or harassment to mediation and/or arbitration.

✓ I have received and understand the handout/pamphlet provided to me explaining the ADR process.

✓ I understand that this agreement to mediate and/or arbitrate my employment related claims does not interfere or change my status as an employee at will, and either I or the Ninety Nine Restaurant & Pub (Ninety Nine) can terminate my employment at any time, with or without cause.

✓ I understand that mediation and/or arbitration is administered through the American Arbitration Association (AAA) under the National Rules for the Resolution of Employment Disputes.

✓ I understand that if I need to initiate mediation and/or arbitration, I need to call Human Resources and request a copy of the "National Rules for the Resolution of Employment Disputes" and a "Request for Mediation/Arbitration form." Once I complete this form, I send it back to Human Resources along with my check (for the appropriate amount) made payable to "American Arbitration Association." My request form, along with all other necessary documentation will be forwarded to the American Arbitration Association for processing.

✓ Mediation/Arbitration shall take place in or near the city in which the Employee is or was last employed by the Company.

✓ I understand that judgment upon the award rendered by the mediator(s) or arbitrator(s) may be entered by any court having jurisdiction thereof.

✓ Employee and Ninety Nine mutually agree that any and all claims or disputes Employee may have now or in the future with or against Ninety Nine, any parent or subsidiary of, or any company affiliated with Ninety Nine, or any of its subsidiaries, and their officers, directors, managers, employees, or agents acting in their capacity as such or otherwise, or that Ninety Nine may have now or in the future with or against Employee, may be heard by a neutral mediator selected from the roster of employment dispute mediators of the American Arbitration Association ("AAA") in accordance with the National Rules for the Resolution of Employment Disputes;

✓ Nothing in this Agreement shall be construed as prohibiting the Employee from filing an administrative charge of discrimination, an unfair labor practice, or other alleged violation of law with the Equal Employment Opportunity Commission, the National Labor Relations Board, or any other government agency acting pursuant to federal or state law.

✓ Employee acknowledges and agrees that Ninety Nine engages in transactions involving interstate commerce and that his/her employment involves such commerce.

Kiran agreed to another arbitration agreement containing virtually identical language when she was re-hired by 99 Restaurants in November 2012. (Add. 6; 18-19, ¶ ¶ 6-9).  Like the original agreement signed by Kiran in 2003, the 2012 agreement does not make any reference to class arbitration or confer upon the employee the right to initiate arbitration proceedings on behalf of anyone but himself or herself.  (Add. 6).  Also, like its predecessor, the 2012 agreement refers

only to the individual "team member" and uses only personal pronouns, "I" and "my." (*Id.*)

Kiran had completed an "Application for Employment" in November, 2012 when she sought to be re-hired. (Add. 7). That Application referred to 99 Restaurants' alternative dispute resolution policy and, like the arbitration agreements described above, provided only for mediation or arbitration of the employee's own individual claims:

> Any controversy or claim arising out of or relating to 1) this application, or the breach thereof; 2) if hired, my compensation, employment or termination of employment (including but not limited to any statutory claims such as discrimination) shall be settled by mediation and/or arbitration administered by the American Arbitration Association. (Add. 7).

99 Restaurants' employees are also given a booklet describing its alternative dispute resolution policy, entitled "Alternative Dispute Resolution: The smarter way to resolve employment disputes" ("the ADR Booklet"). (Add. 8-9, 19 ¶ 11). Like the arbitration agreements and job application form, the ADR Booklet does not mention or refer to class arbitration, and instead refers only to the "employee" and uses the personal pronouns "I," "you," "your" and "my." For example, it states: "If after mediation your dispute is not resolved and you want to take it further, <u>ARBITRATION</u> is the next step." (Add. 9) (capitalization in original).

C.    The Petition to Stay Arbitration Filed by 99 Restaurants

On November 27, 2013, subsequent to Kiran's filing of her Class Demand with the AAA, 99 Restaurants filed a "Petition to Stay Arbitration and to Compel Respondent to Arbitrate Claims on an Individual Basis" in the District of Massachusetts.  (*99 Restaurants LLC v. Kiran*, No. 13-CV-13048-WGY (D. Mass.)).  (Appendix 1a).  In that Petition, 99 Restaurants asserted that since the parties' arbitration agreements neither mentioned class arbitration nor conferred on the arbitrator the right to decide if class arbitration was permissible, the court, not the arbitrator, should decide the parties' "gateway" dispute concerning the arbitrability of class claims.

Kiran filed an opposition brief on Friday, January 10, 2014.  (Add. 3 at #11).  On the following Monday, January 13, 2014, even before 99 Restaurants had an opportunity to file a reply brief, the District Court (Judge William Young) entered a brief electronic order on the docket stating in full as follows:

> The petition to stay is denied, the motion to compel is denied.  The case is administratively closed and may be reopened upon motion of any party once arbitration proceedings have concluded.  (Add. 3 at #12).

This order was not accompanied by an opinion.  99 Restaurants filed a Notice of Appeal pursuant to 9 U.S.C. § 16(a)(3) on January 29, 2014.  (Add. 16). The AAA arbitration proceeding is ongoing.

## SUMMARY OF ARGUMENT

In *Oxford Health Plans, LLC v. Sutter*, 133 S. Ct. 2064, 2068 n. 2 (2013), the Supreme Court noted that it "has not yet decided whether the availability of class arbitration" is a "gateway" question of arbitrability for the courts or a subsidiary question for arbitrators to decide. However, that issue has been decided by one Circuit Court, the Sixth Circuit. It squarely held last year that whether an arbitration agreement permits class arbitration is a "gateway" question of arbitrability to be decided by a court, not an arbitrator. *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013).

The Sixth Circuit's holding in *Reed Elsevier* that it is for courts, not arbitrators, to decide the gateway question of class arbitrability is firmly rooted in Supreme Court precedents. In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002), the Court set forth the guiding presumption that "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" (emphasis in original). "Gateway" disputes are fundamental and important enough that courts "hesitate to interpret silence or ambiguity" as sufficient grounds for giving an arbitrator the power to decide them, because "doing so might too often force unwilling parties to

9

arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options of Chicago v. Kaplan,* 514 U.S. 938, 945 (1995).

The Supreme Court has repeatedly characterized the many differences between bilateral and class arbitration as "fundamental." *Stolt-Nielsen S.A. v. AnimalFeeds Intl. Corp.*, 559 U.S. 662, 686 (2010); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750 (2011). So too has this Court. *Fantastic Sams Franchise Corp. v. FSRO Ass'n*, 683 F.3d 18, 23-24 (1st Cir. 2012). The Supreme Court has emphasized that "[a]rbitration is poorly suited to the higher stakes of class litigation," and absent a defendant's express consent to class arbitration, it is "hard to believe that defendants would bet the company with no effective means of review." *Concepcion*, 131 S. Ct. at 1752. In *Reed Elsevier*, the Sixth Circuit relied upon the "fundamental" differences between bilateral and class arbitration in concluding that class arbitrability is a gateway question for courts to decide, stressing that "[a]n incorrect answer in favor of classwide arbitration would 'forc[e] parties to arbitrate' not merely a single 'matter that they may well not have agreed to arbitrate'… but thousands of them." 734 F.3d at 599, *quoting Howsam*, 537 U.S. at 84.

The silence of the parties' arbitration agreements here concerning class arbitration not only demonstrates that they did not "clearly and unmistakably" agree to allow an arbitrator decide the gateway question of class arbitrability

(*Howsam*, 537 U.S. at 83), it also compels the conclusion that the agreements should be construed by this Court as authorizing only individual arbitration. Arbitration under federal law is always a matter of consent, not coercion. The Supreme Court relied on that bedrock principle in *Stolt-Nielsen* in holding that a party cannot be forced into arbitration on a class basis absent its express agreement to do so. In *Stolt-Nielsen*, the Court stressed that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." 559 U.S. at 685. That is precisely the improper inference that Kiran is asking to be drawn here.

In the wake of *Stolt-Nielsen*, courts have repeatedly held that where, as here, an arbitration agreement makes no reference to class arbitration, only bilateral arbitration is permitted. *See, e.g., Reed Elsevier*, 734 F.3d at 599-600; *Huffman v. The Hilltop Companies, LLC*, 2014 U.S. App. LEXIS 5587 at *18 (6th Cir. March 27, 2014). Moreover, the fact that the arbitration agreements, ADR Booklet and Application for Employment use only personal pronouns and refer only to the right of an individual "employee" to invoke arbitration further demonstrates that only bilateral arbitration is permitted. *See, e.g., Kinecta Alternative Financial Solutions v. Superior Court*, 205 Cal.App.4[th] 506, 518-519, 140 Cal.Rptr.3d 347 (2012).

Accordingly, this Court should hold that class arbitrability is a "gateway" dispute for the courts to decide and that the parties' arbitration agreements permit only bilateral arbitration, not class arbitration.

## STANDARD OF REVIEW

This Court's review of the District Court's Order "is *de novo* because whether a matter is arbitrable is a matter of contract interpretation, and contract interpretation is a matter of law." *Grand Wireless, Inc. v. Verizon Wireless, Inc.,* No. 13-1149, 2014 U.S. App. LEXIS 5276 at *7 (1st Cir. March 19, 2014), *citing Combined Energies v. CCI, Inc.,* 514 F.3d 168, 171 (1st Cir. 2008).

## ARGUMENT

A.    Because of the "Fundamental" Differences Between Bilateral and Class Arbitration, Class Arbitrability is a "Gateway" Dispute Reserved for Judicial Resolution

      1.    Supreme Court Precedents Strongly Support The Sixth Circuit's Holding That Class Arbitrability Should Be Decided by Courts, Not Arbitrators

In *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013), the parties' arbitration agreement was silent with respect to class arbitration. The defendant health plan had agreed during the litigation that the arbitrator should decide whether the agreement permitted class arbitration. *Id.* at 2067, 2068 n. 2. However, the Supreme Court strongly suggested that if the defendant had not consented to let the arbitrator decide class arbitrability, that issue should have been decided by a court:

12

> <u>We would face a different issue if Oxford had argued</u>
> <u>below that the availability of class arbitration is a so-</u>
> <u>called 'question of arbitrability.</u>'  Those questions –
> which include certain gateway matters, such as whether
> parties have a valid arbitration agreement at all or
> whether a concededly binding arbitration clause applies
> to a certain type of controversy – <u>are presumptively for</u>
> <u>courts to decide</u>. . . *Stolt-Nielsen* made clear that this
> Court has not yet decided whether the availability of
> class arbitration is a question of arbitrability. . . But this
> case gives us no opportunity to do so because Oxford
> agreed that the arbitrator should determine whether its
> contract with Sutter authorized class procedures. . .
> Indeed, Oxford submitted that issue to the arbitrator not
> once, but twice – <u>and the second time after *Stolt-Nielsen*</u>
> <u>flagged that it might be a question of arbitrability.</u>

*Oxford Health,* 133 S. Ct. at 2068 n. 2 (internal citations omitted) (emphasis

added).

As correctly noted by the Sixth Circuit in *Reed Elsevier*, the Supreme

Court's recent arbitration cases all but resolve the issue left unanswered in *Oxford*

*Health*:  "[R]ecently the Court has given every indication, short of an outright

holding, that classwide arbitrability is a gateway question rather than a subsidiary

one." *Reed Elsevier*, 734 F.3d at 598.  That conclusion follows ineluctably from

the Supreme Court's repeated emphasis in its recent decisions that "the 'changes

brought about by the shift from bilateral arbitration to class action arbitration' are

'fundamental.'" *Concepcion*, 131 S.Ct. at 1750, *quoting Stolt-Nielsen*, 559 U.S. at

686.  Indeed, the differences between bilateral and class arbitration are "too great"

to presume that "the parties' mere silence on the issue of class-action arbitration

constitutes consent to resolve their disputes in class proceedings." *Stolt-Nielsen*, 559 U.S. at 687.

The starting point for analysis is the bedrock principle that an arbitral proceeding under the FAA is always based on, and limited by, the parties' agreement. "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83. *Accord Stolt-Nielsen*, 559 U.S. at 681 ("the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion'"), *quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

That principle also applies to disputes regarding the scope of what the parties agreed to allow the arbitrator to decide. As noted recently by the Supreme Court in *BG Group PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (U.S. March 5, 2014), "it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." The Court explained that "[i]f the contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." *Id.* In *Howsam*, the Court held that there is a presumption that a "gateway dispute" raises "a 'question of arbitrability' for a court to decide." 537 U.S. at 84. The Court elaborated on this presumption as follows:

> The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the *'question of arbitrability,'* is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'

*Id.* at 83 (italics in original), *quoting AT&T Technologies Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986) and *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Thus, "gateway" questions of arbitrability are presumptively for the courts, rather than arbitrators, to decide. *BG Group*, 134 S. Ct. at 1206; *Oxford Health*, 133 S. Ct. at 2068 n. 2. Gateway disputes include, but are not limited to, questions such as "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.*[1] In *Reed Elsevier v. Crockett*, 2012 U.S. Dist.

---

[1]    In *BG Group*, the Supreme Court also provided additional examples of "gateway disputes" about "arbitrability" that courts presume the parties intended to be decided by courts, not arbitrators:

> *Granite Rock Co. v. Teamsters,* 561 U.S. 287, 299-300 (2010) (disputes over 'formation of the parties' arbitration agreement' and 'its enforceability or applicability to the dispute' at issue are 'matters . . . the court must resolve')… *See First Options, supra,* [514 U.S.] at 941, 943-947 (court should decide whether an arbitration clause applied to a party who 'had not personally signed' the document containing it); *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651 (1986) (court should decide whether a particular labor-management layoff dispute fell within the arbitration clause of a collective-bargaining

(continued…)

LEXIS 23947 at *19 (S.D. Ohio Feb. 24, 2012), *aff'd,* 734 F.3d 594 (6th Cir. 2013), the court held that class arbitrability is a "gateway" issue because it was "being asked to resolve 'a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy' (*Howsam,* 537 U.S. at 84), to wit: whether the arbitration provisions in the parties' agreement apply to classwide arbitration."

In *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995), the Supreme Court explained the underlying reason for the presumption that courts, not arbitrators, should decide "gateway disputes" concerning arbitrability:

> [G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might <u>hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.</u>

*Id.* at 945 (emphasis added). *Accord Howsam,* 537 U.S. at 83-84 (a "question of arbitrability" that courts presumptively decide arises "where contracting parties

---

(...continued)
> contract); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546-548 (1964) (court should decide whether an arbitration provision survived a corporate merger).

*BG Group,* 134 S. Ct. at 1206-7.

would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.").

By contrast, "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Group,* 134 S. Ct. at 1207 (emphasis added). "These procedural matters include claims of 'waiver, delay or a like defense to arbitrability'. . . And they include the satisfaction of 'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.'" *Id., quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 25 (1983) and *Howsam,* 537 U.S. at 85.

Subsequent to *Oxford Health,* there is only one Circuit Court that has squarely addressed "whether classwide arbitrability is presumptively for an arbitrator to decide, or presumptively for a judge." *Reed Elsevier,* 734 F.3d at 598. The Sixth Circuit held several months ago as follows:

> Unlike the question whether, say, one party to an arbitration agreement has waived his claim against the other – which of course is a subsidiary question – the question whether the parties agreed to classwide arbitration is vastly more consequential than even the gateway question whether they agreed to arbitrate

bilaterally.  An incorrect answer in favor of classwide arbitration would 'forc[e] parties to arbitrate' not merely a single 'matter that they may well not have agreed to arbitrate[,]' *Howsam*, 537 U.S. at 84, but thousands of them.  We therefore hold that the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial determination unless the parties clearly and unmistakably provide otherwise.' *Id.* at 83.

734 F.3d at 598-599 (emphasis added).

The Sixth Circuit reasoned that "[g]ateway questions are fundamental to the manner in which the parties will resolve their dispute – whereas subsidiary questions, by comparison, concern details.  And whether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail." *Id.* at 598.  Here, Kiran's proposed class arbitration would encompass over 6,000 servers in a number of states.  (Add. 17 at ¶ 3).  Thus, just as in *Reed Elsevier,* who gets to decide whether the parties' arbitration agreements permit class arbitration is "vastly more consequential" than the "procedural matters" that are to be decided by arbitrators. *Id.* at 599; *BG Group,* 134 S.Ct. at 1207.

In *Reed Elsevier*, the Sixth Circuit explained that the many "fundamental" differences between bilateral and class arbitration compelled its conclusion that class arbitrability is a gateway issue that courts should decide:

[F]or several reasons, the [Supreme] Court has characterized the differences between bilateral and classwide arbitration as 'fundamental.' [*Stolt-Nielsen*, 559 U.S.] at 686; *AT&T Mobility LLC v. Concepcion,* 131 S. Ct.

18

1740, 1750 (2011) (same). First, arbitration's putative benefits – 'lower costs, greater efficiency and speed,' et cetera – 'are much less assured' with respect to classwide arbitration, 'giving reason to doubt the parties' mutual consent to that procedure.' *Stolt-Nielsen* at 685; *see also Concepcion*, 131 S. Ct. at 1751 (stating that 'the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment'). Second, '[c]onfidentiality becomes more difficult' in classwide arbitrations, *id.* at 1750 – thus 'potentially frustrating the parties' assumptions when they agreed to arbitrate.' *Stolt-Nielsen*, 559 U.S. at 686. Third, 'the commercial stakes of class-action arbitration are comparable to those of class-action litigation' – indeed, Crockett seeks an award of $500 million here – 'even though the scope of judicial review is much more limited[.]' *Id.* at 686-87. And then there are the due-process concerns: once an arbitration is expanded classwide, '[t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well.' *Id.* at 686. Consequently, the absent parties 'must be afforded notice, an opportunity to be heard, and a right to opt out of the class.' *Concepcion*, 131 S. Ct. at 1751. Indeed, 'where absent class members have not been required to opt in, it is difficult to see how an arbitrator's decision to conduct class proceedings could bind absent class members who have not authorized the arbitrator to decide on a classwide basis which arbitration procedures are to be used.' *Oxford Health*, 133 S. Ct. at 2071-72 (Alito, J., concurring). Thus, in sum, '[a]rbitration is poorly suited to the higher stakes of class litigation.' *Concepcion*, 131 S. Ct. at 1752.

*Reed Elsevier*, 734 F.3d at 598.[2]

---

[2] Likewise, in another recent decision directly on point, *Chassen v. Fidelity National Financial*, 2014 U.S. Dist. LEXIS 6227 at \*16-17 (D.N.J. Jan. 17, (continued...)

The arbitration agreement in *Reed Elsevier* did not "clearly and unmistakably assign to an arbitrator the question whether the agreement permits classwide arbitration. Instead it does not mention classwide arbitration at all." 734 F.3d at 599. The same is true here. The Sixth Circuit emphasized as follows:

> [G]iven the total absence of any reference to classwide arbitration in this clause, the agreement here can just as easily be read to speak only to issues related to bilateral arbitration. <u>Thus, at best, the agreement is silent or ambiguous as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts.</u> *Stolt-Nielsen,* 559 U.S. at 684-85. We therefore agree with the district court that the question whether Crockett and LexisNexis agreed to arbitrate [on a classwide basis] must 'be decided by the court, not the arbitrator.'

---

(...continued)
2014), the court provided similar reasons for concluding that class arbitrability is a fundamental, gateway issue for the court to decide:

> Once parties have subjected themselves to arbitration, there are few, if any, means to review the arbitrator's decision. As a result, as the Supreme Court has recognized, '[a]rbitration is poorly suited to the higher stakes of class litigation.' *Concepcion*, 131 S.Ct. at 1752. This is so for several reasons. First, the benefits of arbitration – lower cost, greater efficiency and speed – are not as significantly realized when used in a class action. *See Stolt-Nielsen*, 559 U.S. at 685. Second, confidentiality of class members' personal data may become compromised. *Id*. at 686. Third, the commercial stakes are very significant in class action arbitration. *Id.* Lastly, due process issues arise because the rights of individuals who have not yet opted into arbitration are being adjudicated. *Sutter,* 133 S. Ct. at 2071.

734 F.3d at 599 (emphasis added) *Accord Huffman v. The Hilltop Companies*,

2014 U.S. App. LEXIS 5587 at *18 (6th Cir. March 27, 2014) ("As was the case in

*Reed Elsevier*, here the parties' agreement is silent as to whether an arbitrator or a

court should determine the question of classwide arbitrability, meaning the

determination lies with this court."); *Chassen v. Fidelity National Financial, Inc.*,

2014 U.S. Dist. LEXIS 6227, at *17-18 (D.N.J. Jan. 17, 2014) ("In this case, the

arbitration clauses do not clearly assign class arbitration to the arbitrator... In the

opinion of this Court, there must be an actual showing of consent in order to refer a

matter to class-wide arbitration... [T]he Court finds that the issue of class-wide

arbitration is a gateway issue"); *Corrigan v. Domestic Linen Supply Co., Inc.*,

2012 U.S. Dist. LEXIS 100961, at *11-12 (N.D. Ill. July 20, 2012) ("It is for the

courts, not arbitrators... to determine whether the parties have agreed to class

arbitration"); *Goodale v. George S. May Int'l Co.*, 2011 WL 1337349, at *2 (N.D.

Ill. April 5, 2011) (same).

> 2.    Kiran's Arguments Against Judicial Determination
>        Of Class Arbitrability Are Unavailing

In the District Court, Kiran relied heavily on this Court's decision in

*Fantastic Sams Franchise Corp. v. FSRO Ass'n*, 683 F.3d 18 (1st Cir. 2012), but

that decision lends absolutely no support to her position here. The *Fantastic Sams*

arbitration claimants were <u>not</u> pursuing a class action. Instead, twenty-five

franchisees were proceeding in what this Court called an "associational action."

683 F.3d at 22, 23, 24.  In contrast to Kiran, the claimant ("FSRO") in *Fantastic Sams* did "not seek to represent any absent parties, or any parties who are not signatories of the agreements at issue… FSRO's members cannot, for example, obtain individualized damage awards, as in some class actions.  In addition, the arbitrators do not have to certify a class, or provide public notice of the arbitration…." *Id.* at 23 (emphasis added).  Indeed, this Court expressly distinguished the "associational action" brought in arbitration by FSRO from a true class action: **"we cannot say as a matter of law that FSRO's associational action in this case is equivalent to a class action."** *Id.* at 23 (emphasis added).  The Court further stated that **"the Supreme Court has not extended *Stolt-Nielsen* to the type of associational action brought by FSRO, which is different in many respects from the class-action arbitration at issue in *Stolt-Nielsen*."** *Id.* at 22 (emphasis added).

This Court stressed in *Fantastic Sams* that the FSRO "associational action" did not raise "the same concerns that animated the Court's decision in *Stolt-Nielsen*" regarding class arbitration.  683 F.3d at 24.  Those concerns were as follows:

> In *Stolt-Nielsen*, the Court was concerned with the particular features of class-action arbitrations and with the fundamental changes those features work in the arbitration process.  The Court held that an arbitrator may not infer an agreement to authorize class arbitration from the sole fact of the parties' agreement to arbitrate because 'class-action

> arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.' [130 S.Ct.] at 1775.
>
> The Court highlighted 'just some of the fundamental changes brought by the shift from bilateral arbitration to class-action arbitration.' *Id.* at 1776. An arbitrator resolves not a single dispute between the parties, but instead many disputes between hundreds or thousands of parties, potentially including non-domestic parties. *Id.* Further, the arbitrator's award no longer binds just the parties to the arbitration agreement, but adjudicates the rights of absent parties as well. *Id.* The 'commercial stakes of class-action arbitration are comparable to those of class-action litigation,' but judicial review is limited. *Id.* Finally, 'the presumption of privacy and confidentiality' that typically applies in many bilateral arbitration agreements may not apply. *Id.*

683 F.3d at 23 (emphasis added).

While the "concerns" about the "fundamental" differences between bilateral and class arbitration were not implicated in *Fantastic Sams*, they certainly arise here because Kiran's arbitration is brought on behalf of a putative class of over 6,000 servers in many states. (Add. 17 at ¶ 3). Thus, to the extent that *Fantastic Sams* is relevant here, it is fully consistent with the Sixth Circuit's conclusion in *Reed Elsevier* that "the question whether the parties agreed to classwide arbitration is vastly more consequential than even the gateway question whether they agreed to arbitrate bilaterally." 734 F.3d at 599.

Kiran also previously relied on this Court's decision in *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007). In that case, the parties

agreed that the case should proceed in arbitration, but disagreed as to whether the arbitration could proceed on a classwide basis. *Id.* at 55. However, they all requested that this Court decide that issue, and not refer it to the arbitrator. *Id.* In *dicta,* the Court cited the plurality opinion in *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444 (2003), for the proposition that when claims are submitted to arbitration, the question of whether class arbitration is allowed is not a question of arbitrability, but instead should be decided by the arbitrator. 508 F.3d at 56. That *dicta* should be accorded no weight, as it long preceded the decisions in *Stolt-Nielsen* and *Oxford Health*, where the Supreme Court "made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability." *Oxford Health*, 133 S. Ct. at 2068 n. 2 (emphasis added). [3]

In the court below, Kiran argued that the parties' reference in their arbitration agreements to the AAA "National Rules for the Resolution of Employment Disputes" (now known as the "Employment Arbitration Rules and Mediation Procedures") supports her contention that class arbitrability is for the

---

[3]     In *Stolt-Nielsen*, the Court repeatedly stressed that in *Bazzle*, "only the plurality" decided the question of whether a court or an arbitrator should decide the availability of class arbitration, as "*Bazzle* did not yield a majority decision." 559 U.S. at 679, 680. It declared in no uncertain terms that "*Bazzle* did not establish the rule to be applied in deciding whether class arbitration is permitted. The decision in *Bazzle* left that question open…" *Id.* at 680-81. (emphasis added)

arbitrator to decide.  She asserted that the AAA Supplementary Rules for Class

Action Arbitration apply to any dispute governed by any of the AAA rules where a

party has submitted a claim on behalf of a class, and Rule 3 of those

Supplementary Rules provides for an arbitrator to construe the arbitration clause to

determine whether it permits class arbitration.  (Appendix at 83a).

However, an identical argument was properly rejected by the Sixth

Circuit in *Reed Elsevier*, where the parties' agreement had likewise provided for

arbitration under the AAA Rules:

> [T]he Supplemental Rules expressly state that one should
> 'not consider the existence of these Supplementary Rules,
> or any other AAA rules, to be a factor either in favor of or
> against permitting the arbitration to proceed on a class
> basis.'

734 F.3d at 599-600.

<u>Nowhere</u> in either the AAA Employment Rules or Supplementary

Rules does it state that, by agreeing to arbitrate under such Rules, the parties also

agree to have the arbitrator decide the gateway issue of class arbitrability.  Rule 3

of the Supplementary Rules applies <u>only</u> where the parties have agreed that the

arbitrator should decide class arbitrability.[4]  It is the parties' own arbitration

---

[4]    The Supplementary Rules were implemented in the wake of the Supreme
Court's plurality decision in *Bazzle*, and the AAA rulemakers mistakenly
assumed, like the parties in *Stolt-Nielsen* (559 U.S. at 680), that the Supreme
Court had decided the issue of whether a court or an arbitrator should

(continued...)

agreement – not AAA rules – that determines what disputes are to be resolved by an arbitrator. The arbitration agreements here, like the agreement in *Reed Elsevier*, did not "clearly and unmistakably assign to an arbitrator the question whether the agreement permits classwide arbitration. Instead it does not mention classwide arbitration at all." 734 F.3d at 599.

Consistent with the many Supreme Court precedents discussed above and the Sixth Circuit's recent decisions in *Reed Elsevier* and *Huffman*, 99 Restaurants respectfully submits that this Court should hold that, in light of the "fundamental" differences between bilateral and class arbitration, the availability of class arbitration in this case is a gateway question of arbitrability that should be

---

(...continued)

determine the availability of class arbitration. The AAA's webpage contains a policy statement that demonstrates that it was operating under a mistaken interpretation of the effect of the plurality opinion in *Bazzle*:

On October 8, 2003, in response to the ruling of the United States Supreme Court in *Green Tree Financial Corp. v. Bazzle*, the American Arbitration Association issued its Supplemental Rules for Class Arbitrations to govern proceedings brought as class arbitrations. In *Bazzle*, **the Court held** that, where an arbitration agreement was silent regarding the availability of class-wide relief, an arbitrator, and not a court, must decide whether class relief is permitted. (emphasis added).

https://www.adr.org/aaa/ShowPDF?doc=ADRSTG_003840

As discussed above, the subsequent decisions in *Stolt-Nielsen* and *Oxford Health* make it abundantly clear that the AAA's interpretation was incorrect and that the Supreme Court has not yet decided this issue.

decided by a court, not an arbitrator, as the parties' agreements here do not "clearly and unmistakably provide otherwise." *BG Group,* 134 S. Ct. at 1207.

B.    The Parties' Arbitration Agreements Do Not Provide For Class Arbitration

As demonstrated above, because the parties' arbitration agreements make no reference to class arbitration, much less do they contain any language "clearly and unmistakably" authorizing the arbitrator to decide class arbitrability (*BG Group*, 134 S. Ct. at 1207), it is within the sole province of the courts to decide the gateway issue of class arbitrability. Similarly, the agreements' silence concerning class arbitration compels the conclusion that only individual arbitration of Kiran's claims is authorized. That conclusion is reinforced by the fact that the agreements use only personal pronouns and refer only to the claims of the individual "employee."

The Supreme Court has repeatedly stressed that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen*, 559 U.S. at 684 (italics in original). *Accord Oxford Health*, 133 S. Ct. at 2066 ("Class arbitration is a matter of consent. An arbitrator may employ class procedures only if the parties have authorized them"); *American Express Co. v. Italian Colors Restaurant,* 133 S. Ct. 2304, 2308 (2013) ("[A] party may not be compelled to submit to class

arbitration absent an agreement to do so"); *Concepcion*, 131 S. Ct. at 1750-51 (class arbitration "is inconsistent with the FAA" unless it is "consensual").

In *Stolt-Nielsen*, the Court declared that "[a]n implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. That is so because <u>class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed that the parties consented to it by simply agreeing to submit their disputes to an arbitrator</u>." 559 U.S. at 685 (emphasis added). *Accord Concepcion,* 131 S. Ct. at 1752 (noting that "class arbitration greatly increases risks to defendants" and "[a]rbitration is poorly suited to the higher stakes of class litigation;" therefore, "[w]e find it hard to believe that defendants would bet the company with no effective means of review.").

Like the arbitration agreement in *Stolt-Nielsen*, the 2003 and 2012 arbitration agreements at issue here are "silent" with respect to class arbitration. (Add. 5-6). Also, the ADR Booklet and the Application for Employment signed by Kiran in 2012 are silent with respect to class arbitration. (Add. 7-9). Under *Stolt-Nielsen*, that silence alone is dispositive and compels the conclusion that the parties did not agree to class arbitration.

In *Reed Elsevier*, after first concluding that the availability of class arbitration was a gateway question of arbitrability for the court to decide, the Sixth

Circuit went on to find that the silence of the parties' arbitration agreement concerning class arbitration meant that only bilateral arbitration was agreed to by the parties:

> The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it. . . . Crockett also responds that the agreement does not expressly exclude the possibility of classwide arbitration, which is true enough. But the agreement does not include it either, which is what the agreement needs to do in order for us to force that momentous consequence upon the parties here.
>
> The Supreme Court has made clear that '[a]n implicit agreement to authorize class-action arbitration' should not be inferred 'solely from the fact of the parties' agreement to arbitrate.' *Stolt-Nielsen*, 559 U.S. at 685. That, at bottom, is the inference that Crockett asks us to make here. The agreement in this case does not provide for classwide arbitration.

734 F.3d at 599-600 (emphasis added). *Accord Huffman*, 2014 U.S. App. LEXIS 5587 at *18 ("[T]he parties' arbitration clause nowhere mentions classwide arbitration... We therefore conclude that the arbitration clause does not authorize classwide arbitration, and hold that the plaintiffs must proceed individually"); *Hickey v. Brinker Int'l Payroll Co.*, 2014 U.S. Dist. LEXIS 20387 at *11-12 (D. Colo. Feb. 18, 2014) (rejecting plaintiffs' argument that they "should be permitted to pursue class and collective action claims" in arbitration because the arbitration agreement did not expressly bar such claims; court held that "[t]he mere silence of the 2009 agreements on this issue cannot be read to require defendant to submit to

arbitration of class or collective action claims"); *DeBose v. Smith & Wollensky Restaurant Group, Inc.*, 2013 U.S. Dist. LEXIS 140323 at *4-5 (S.D. Tex. Sept. 30, 2013) (finding that arbitrator correctly construed arbitration agreement as allowing arbitration of only individual claims because it was silent with respect to class arbitration); *In re A2P SMS Antitrust Litigation*, 2013 U.S. Dist. LEXIS 132303 at *76 n. 16 (S.D.N.Y. Sept. 16, 2013) ("The clauses do not specifically disallow class-wide arbitration, but the Supreme Court has held that arbitration clauses will not be read to implicitly authorize class-wide arbitration unless such a provision is explicitly contained in the agreement."); *Smith v. BT Conferencing, Inc.*, 2013 U.S. Dist. LEXIS 158362 at *15 (S.D. Ohio Nov. 5, 2013) ("where an arbitration agreement is silent on whether to permit class arbitration, it is improper to interpret the arbitration agreement to authorize class arbitration").

Not only do the parties' arbitration agreements lack any language evidencing their mutual consent to class arbitration, the wording of the agreements plainly reflects the parties' intent to arbitrate solely on a bilateral basis.  As shown above, the agreements repeatedly use only personal pronouns, *e.g.*, "**I** understand that this agreement to mediate and/or arbitrate **my** employment related claims. . ."; "**I**, the undersigned party, hereby agree to submit any controversy or dispute arising out of or in connection with **my** compensation, employment or termination of employment… to mediation and/or arbitration."  (Add. 5) (emphasis added).

Likewise, the Application for Employment states that "[a]ny controversy or claim arising out of or relating to… **my** compensation, employment or termination of employment… shall be settled by mediation and/or arbitration…" (Add. 7) (emphasis added). [5] The agreements also refer to the right of the individual "employee" to assert his or her own individual claims (*e.g.*, "**Employee** and Ninety Nine mutually agree that any and all claims or disputes **Employee** may have now or in the future with or against Ninety Nine . . . may be heard by a neutral mediator. . . .") (Add. 5) (emphasis added).  Nowhere in the arbitration agreements, the ADR Booklet or the Application for Employment is there <u>any</u> language evidencing the parties' mutual intent to allow the employee to initiate arbitration on behalf of anyone other than himself or herself.  (Add. 5-9).

In an analogous case, the court found that the parties' use of personal pronouns in their arbitration agreement was plainly insufficient to manifest their joint agreement to class arbitration, as required by *Stolt-Nielsen*.  *Kinecta Alternative Financial Solutions, Inc. v. Superior Court*, 205 Cal. App. 4th 506, 140 Cal. Rptr. 3d 347 (2012).  The court stated:

> [T]he order compelling arbitration imposed class
> arbitration even though the arbitration provision was

---

[5]     Similarly, the ADR Booklet states that: "If after mediation **your** dispute is not resolved and **you** want to take it further, ARBITRATION is the next step."  (Add. 9) (emphasis added, capitalization in original).

limited to the arbitration of disputes between Malone and
Kinecta. Malone cites no evidence that despite the
language of the arbitration provision, the parties agreed
to arbitrate disputes of classes of other employees,
employee groups, or employee members of classes
identified in the complaint. The parties' arbitration
agreement authorizes arbitration only of 'any claim,
dispute, and/or controversy that either *I* may have against
the Credit Union (or its owners, directors, officers,
managers, employees, agents, and parties affiliated with
its employee benefit and health plans) or the Credit
Union may have against *me*, arising from, related to, or
having any relationship or connection whatsoever with
*my* seeking employment with, employment by, or other
association with the Credit Union.' (Italics added) We
conclude that the parties did not agree to authorize class
arbitration in their arbitration agreement.

205 Cal. App. 4th at 518-19. (italics in original). *Accord Nelsen v. Legacy*

*Partners Residential, Inc.*, 207 Cal.App.4[th] 1115, 1129-30 and n. 7, 114

Cal.Rptr.3d 198 (2012).[6]

---

[6]   In *Nelsen*, the Court held that the agreement contemplated arbitration only of
plaintiff's own individual disputes and precluded class arbitration:

While the arbitration agreement in issue broadly encompasses
any employment-related 'claim, dispute, or controversy…
which would otherwise require or [allow] resort to any court,' it
contains one very significant limitation. The agreement only
covers claims, disputes, and controversies 'between myself and
Legacy Partners,' that is, between Nelsen and LPI. A class
action by its very nature is not a dispute or controversy
'between [Nelsen] and Legacy Partners.' In this case (assuming
a class was certified) it would be a dispute between LPI and
numerous different individuals, one of whom is Nelsen.
Although LPI agreed with Nelsen to arbitrate all kinds of
disputes that might arise between *them,* this choice of

(continued…)

In sum, the silence of the parties' agreements concerning class arbitration, coupled with the agreements' repeated use of personal pronouns and reference only to the claims of the individual employee, compel the conclusion that the agreements only authorize arbitration of Kiran's individual claims.

---

(…continued)

contractual language, by its ordinary meaning, unambiguously negates any intention by LPI to arbitrate claims or disputes to which Nelsen was not a party.

*     *     *

The common thread in all such potential disputes is that they involve the adjudication of *Nelsen's* rights or obligations, not those of other employees or groups of employees.

207 Cal.App.4[th] at 1129-30 and n. 7 (italics in original).

## CONCLUSION

For the reasons set forth above, Petitioner-Appellant 99 Restaurants respectfully submits that the District Court's Order should be reversed. This Court should find that the availability of class arbitration is a gateway question of arbitrability for the Court to decide, and also find that the parties' arbitration agreements only authorize the arbitration of Kiran's individual claims.

Respectfully submitted,

/s/ Burt M. Rublin
Burt M. Rublin
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Phone - 215.864.8116
Fax - 215.864.9783
rublin@ballardspahr.com

*Attorney for the Petitioner-Appellant,*
*99 Restaurants, LLC*

May 12, 2014

**OF COUNSEL:**

Michael Mankes
**LITTLER MENDELSON, P.C.**
One International Place, Suite 2700
Boston, MA  02110
Phone - 617.378.6000
Fax - 617.737.0052
mmankes@littler.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 7,760 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B) (iii).

This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 word processing software in 14 point Times New Roman font.

Dated:  May 12, 2014                    /s/ Burt M. Rublin
                                        Burt M. Rublin

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on May 12, 2014, I electronically filed the

foregoing Brief of Petitioner-Appellant 99 Restaurants, LLC with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

e-mail addresses of the following counsel for Respondent-Appellee:

        Stephen S. Churchill
        Hillary A. Schwab
        Brant Casavant
        FAIR WORK PC
        192 South Street
        Suite 450
        Boston, MA 02111

                        /s/ Burt M. Rublin_____
                        Burt M. Rublin

NO. 14-1135

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

99 RESTAURANTS, LLC,

*Petitioner-Appellant,*

v.

CONSTANZA KIRAN, on behalf of
herself  and all others similarly situated,

*Respondent- Appellee.*

APPEAL FROM ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

ADDENDUM TO BRIEF OF
PETITIONER-APPELLANT 99 RESTAURANTS, LLC

Michael Mankes, MA Bar No. 662127
mmankes@littler.com
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Telephone: 617.378.6000
Facsimile: 617.737.0052

Burt M. Rublin
rublin@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street
51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.864.8116
Facsimile: 215.864.8999

*Attorneys for Petitioner-Appellant,*
*99 Restaurants, LLC*

## ADDENDUM TABLE OF CONTENTS

**Page**

District Court Docket Entries........................................................................... Add. 1

December 2003 Arbitration Agreement........................................................... Add. 5

November 2012 Arbitration Agreement .......................................................... Add. 6

Application for Employment............................................................................ Add. 7

ADR Booklet.................................................................................................... Add. 8

Class Demand for Arbitration ....................................................................... Add. 10

Notice of Appeal .......................................................................................... Add. 16

Affidavit of Brant Fahle ............................................................................... Add. 17

APPEAL

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:13-cv-13048-WGY

99 Restaurants, LLC v. Kiran
Assigned to: Judge William G. Young
Case in other court: USCA, 14-01135
Cause: 29:201 Denial of Overtime Compensation

Date Filed: 11/27/2013
Date Terminated: 01/13/2014
Jury Demand: None
Nature of Suit: 896 Other Statutes: Arbitration
Jurisdiction: Federal Question

**Petitioner**

**99 Restaurants, LLC**                     represented by   **Jennifer Robinson**
Littler Mendelson PC
333 Commerce Street
Suite 1450
Nashville, TN 37201
615-383-3033
Email: jenrobinson@littler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tara L. Presnell**
Littler Mendelson PC
333 Commerce Street
Suite 1450
Nashville, TN 37201
615-383-3033
Email: tpresnell@littler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Mankes**
Littler Mendelson P.C.
One International Place
Suite 2700
Boston, MA 02110
617-378-6006
Fax: 617-737-0052
Email: mmankes@littler.com
*ATTORNEY TO BE NOTICED*

V.

ADD. 1

**Respondent**

**Costanza Kiran**
*on behalf of herself and all others*
*similarly situated*

represented by **Hillary A. Schwab**
Fair Work, P.C.
450, 4th Floor
192 South Street
Boston, MA 02111
617-607-3260 ✆
Email: hillary@fairworklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen S. Churchill**
Fair Work, P.C.
192 South Street, Suite 450
Boston, MA 02111
617-607-3260 ✆
Email: steve@fairworklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/27/2013 | 1 | PETITION TO STAY ARBITRATION AND TO COMPEL RESPONDENT TO ARBITRATE CLAIMS ON AN INDIVIDUAL BASIS against Costanza Kiran Filing fee: $ 400, receipt number 0101-4750650 (Fee Status: Filing Fee paid), filed by 99 Restaurants, LLC. (Attachments: # 1 Exhibit A - Class Demand, # 2 Affidavit of Brant Fahle, # 3 Exhibit B - Arbitration Agreement, # 4 Exhibit C - 2012 Arbitration Agreement, # 5 Exhibit D - Acknowledgment, # 6 Exhibit E - ADR Booklet, # 7 Exhibit F - Employment Arbitration Rules, # 8 Exhibit G - Supplementary Rules, # 9 Civil Cover Sheet, # 10 Category Form) (Mankes, Michael) Modified on 11/27/2013 (LaFlamme, Jennifer). (Entered: 11/27/2013) |
| 11/27/2013 | 2 | ELECTRONIC NOTICE of Case Assignment. Judge William G. Young assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Marianne B. Bowler. (Abaid, Kimberly) (Entered: 11/27/2013) |
| 11/27/2013 | 3 | Summons Issued as to Costanza Kiran. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (LaFlamme, Jennifer) (Entered: 11/27/2013) |
| 11/27/2013 | 4 | CORPORATE DISCLOSURE STATEMENT by 99 Restaurants, LLC identifying Corporate Parent O'Charley's Management Company LLC, Corporate Parent O'Charley's, LLC, Corporate Parent ABRH, LLC, Corporate Parent Fidelity Newport Holdings, LLC, Corporate Parent Fidelity National Special Opportunities, Inc., Corporate Parent Fidelity National Special Opportunities, Inc., Corporate Parent Fidelity National Financial, Inc. for 99 |

ADD. 2

| | | Restaurants, LLC.. (Mankes, Michael) (Entered: 11/27/2013) |
|---|---|---|
| 12/03/2013 | 5 | NOTICE of Appearance by Stephen S. Churchill on behalf of Costanza Kiran (Churchill, Stephen) (Entered: 12/03/2013) |
| 12/03/2013 | 6 | NOTICE of Appearance by Hillary A. Schwab on behalf of Costanza Kiran (Schwab, Hillary) (Entered: 12/03/2013) |
| 12/06/2013 | 7 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Jennifer Robinson and Tara L. Presnell Filing fee: $ 200, receipt number 0101-4761087 by 99 Restaurants, LLC. (Attachments: # 1 Affidavit Jennifer Robinson, # 2 Exhibit Certificate of Good Standing, # 3 Affidavit Tara Presnell, # 4 Exhibit Certificate of Good Standing)(Mankes, Michael) (Entered: 12/06/2013) |
| 12/06/2013 | 8 | Judge William G. Young: ELECTRONIC ORDER entered granting 7 Motion for Leave to Appear Pro Hac Vice Added Jennifer Robinson and Tara L. Presnell. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Paine, Matthew) (Entered: 12/06/2013) |
| 12/10/2013 | 9 | Assented to MOTION *to Establish Deadline for Submitting Opposition to Petition* by Costanza Kiran.(Churchill, Stephen) (Entered: 12/10/2013) |
| 12/12/2013 | 10 | Judge William G. Young: ELECTRONIC ORDER entered granting 9 Assented to MOTION to Establish Deadline for Submitting Opposition to Petition. Opposition Due January 10, 2014. (Paine, Matthew) (Entered: 12/12/2013) |
| 01/10/2014 | 11 | ANSWER to 1 Complaint,, *Opposing Petition to Stay Arbitration and to Compel Respondent to Arbitrate Claims on an Individual Basis* by Costanza Kiran. (Attachments: # 1 Exhibit A)(Churchill, Stephen) (Entered: 01/10/2014) |
| 01/13/2014 | 12 | Judge William G. Young: ELECTRONIC ORDER entered: The petition to stay is denied, the motion to compel is denied. The case is administratively closed and may be reopened upon motion of any party once arbitration proceedings have concluded. (Paine, Matthew) (Entered: 01/13/2014) |
| 01/13/2014 | 13 | Judge William G. Young: ORDER entered. ORDER for Administrative Closure (Paine, Matthew) (Entered: 01/13/2014) |
| 01/29/2014 | 14 | NOTICE OF APPEAL as to 13 Order by 99 Restaurants, LLC Filing fee: $ 505, receipt number 0101-4838501 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 2/18/2014.** (Mankes, Michael) (Entered: 01/29/2014) |
| | | |

ADD. 3

| 01/30/2014 | <u>15</u> | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re <u>14</u> Notice of Appeal. (Paine, Matthew) (Entered: 01/30/2014) |
| 01/30/2014 | 16 | USCA Case Number 14-1135 for <u>14</u> Notice of Appeal filed by 99 Restaurants, LLC. (Paine, Matthew) (Entered: 01/30/2014) |

<table>
<tr><td colspan="3" align="center"><b>PACER Service Center</b></td></tr>
<tr><td colspan="3" align="center"><b>Transaction Receipt</b></td></tr>
<tr><td colspan="3" align="center">05/06/2014 09:00:48</td></tr>
<tr><td><b>PACER Login:</b></td><td>bs0030</td><td><b>Client Code:</b></td><td></td></tr>
<tr><td><b>Description:</b></td><td>Docket Report</td><td><b>Search Criteria:</b></td><td>1:13-cv-13048-WGY</td></tr>
<tr><td><b>Billable Pages:</b></td><td>3</td><td><b>Cost:</b></td><td>0.30</td></tr>
</table>

ADD. 4

\\Image01fsc\DXPWorking\TMFiles\Output\00001A50\00001A50_0074.TIF

## *Alternative Dispute Resolution*
### *Employee sign off form*

I, the undersigned party, hereby agree to submit any controversy or dispute arising out of or in connection with my compensation, employment or termination of employment, including but not limited to any statutory claims, such as discrimination or harassment to mediation and/or arbitration.

- ✓ I have received and understand the handout/pamphlet provided to me explaining the ADR process.
- ✓ I understand that this agreement to mediate and/or arbitrate my employment related claims does not interfere or change my status as an employee at will, and either I or the Ninety Nine Restaurant & Pub (Ninety Nine) can terminate my employment at any time, with or without cause.
- ✓ I understand that mediation and/or arbitration is administered through the American Arbitration Association (AAA) under the National Rules for the Resolution of Employment Disputes.
- ✓ I understand that if I need to initiate mediation and/or arbitration, I need to call Human Resources and request a copy of the "National Rules for the Resolution of Employment Disputes" and a "Request for Mediation/Arbitration form". Once I complete this form, I send it back to Human Resources along with my check (for the appropriate amount) made payable to "American Arbitration Association". My request form, along with all other necessary documentation will be forwarded to the American Arbitration Association for processing.
- ✓ Mediation/Arbitration shall take place in or near the city in which the Employee is or was last employed by the Company.
- ✓ I understand that judgment upon the award rendered by the mediator(s) or arbitrator(s) may be entered by any court having jurisdiction thereof.
- ✓ Employee and Ninety Nine mutually agree that any and all claims or disputes Employee may have now or in the future with or against Ninety Nine, any parent or subsidiary of, or any company affiliated with Ninety Nine, or any of its subsidiaries, and their officers, directors, managers, employees, or agents acting in their capacity as such or otherwise, or that Ninety Nine may have now or in the future with or against Employee, may be heard by a neutral mediator selected from the roster of employment dispute mediators of the American Arbitration Association ("AAA") in accordance with the National Rules for the Resolution of Employment Disputes;
- ✓ Nothing in this Agreement shall be construed as prohibiting the Employee from filing an administrative charge of discrimination, an unfair labor practice, or other alleged violation of law with the Equal Employment Opportunity Commission, the National Labor Relations Board, or any other government agency acting pursuant to federal or state law.
- ✓ Employee acknowledges and agrees that Ninety Nine engages in transactions involving interstate commerce and that his/her employment involves such commerce.

_Constanza Rivera_
**Employee Name (Please Print)**

_[signature]_
**Employee Signature**

_12/3/03_
**Date**

_Salem NH        10026_
**Restaurant Location and Number**

Rev. 10/03

ADD. 5

### Alternative Dispute Resolution

I hereby agree to submit any controversy or dispute arising out of or in connection with my compensation, employment or termination of employment, including but not limited to any state or federal statutory claims, such as discrimination or harassment to mediation and/or arbitration.

- ✓ I have received and understand the handout/pamphlet provided to me explaining the ADR process.

- ✓ I understand that this agreement to mediate and/or arbitrate my employment related claims does not interfere or change my status as a team member at will, and either I or the Ninety Nine Restaurant & Pub (Ninety Nine) can terminate my employment at any time, with or without cause.

- ✓ I understand that mediation and/or arbitration is administered through the American Arbitration Association (AAA) under the National Rules for the Resolution of Employment Disputes.

- ✓ I understand that if I need to initiate mediation and/or arbitration, I need to call Human Resources and request a copy of the "National Rules for the Resolution of Employment Disputes" and a "Request for Mediation/Arbitration form". Once I complete this form, I send it back to Human Resources along with my check (for the appropriate amount) made payable to "American Arbitration Association". My request form, along with all other necessary documentation will be forwarded to the American Arbitration Association for processing.

- ✓ Mediation and, if necessary, Arbitration shall take place in or near the city in which the team member is or was last employed by the Company.

- ✓ I agree that I must request arbitration, if at all, within one year of the event or conduct about which I am complaining, or within the applicable time period provided by state or federal law, whichever is shorter.

- ✓ I understand that judgment upon the award rendered by the mediator(s) or arbitrator(s) may be entered by any court having jurisdiction thereof.

- ✓ The team member and Ninety Nine mutually agree that any and all claims or disputes the team member may have now or in the future with or against Ninety Nine, any parent or subsidiary of, or any company affiliated with Ninety Nine, or any of its subsidiaries, and their officers, directors, managers, team members, or agents acting in their capacity as such or otherwise, or that Ninety Nine may have now or in the future with or against the team member, may be heard by a neutral mediator selected from the roster of employment dispute mediators of the American Arbitration Association ("AAA") in accordance with the National Rules for the Resolution of Employment Disputes;

- ✓ Nothing in this Agreement shall be construed as prohibiting the team member from filing an administrative charge of discrimination, an unfair labor practice, or other alleged violation of law with the Equal Employment Opportunity Commission, the National Labor Relations Board, or any other government agency acting pursuant to federal or state law.

- ✓ Team member acknowledges and agrees that Ninety Nine engages in transactions involving interstate commerce and that his/her employment involves such commerce.

# APPLICATION FOR EMPLOYMENT

Positions that you would like to apply for:   Server X     Bartender     Host     Line Cook     Dish     Management     Other

Date Available to Start:   **11/19/2012**     Wage Desired: _____     Referred By: **Karl Money**

Are you applying for:  Full Time X   Part Time?     Email:     connierf@hotmail.com

| Please list the shift you are available each day | Any | Lunch | Dinner | None |
|---|---|---|---|---|
| Monday | X | ✗ | | |
| Tuesday | X | | ✗ | |
| Wednesday | X | | X | |
| Thursday | X | | | |
| Friday | X | | ✗ | |
| Saturday | X | | X | |
| Sunday | X | ✗ | | |

Legal Name:   **Kiran**            **Constanza**                    Phone: (home) **617-447-3007**

  Last        First        Middle Initial

Address:  **11314 Inwood Drive**        **Woburn**        **MA**        **01801**

  Number and Name of Street     City     State     Zip Code

How long have you been at present address (years)   **1 MONTH**        Social Security Number (must have one): _____

Are you 18 years or older?  Yes X   No        Have you ever worked at the Ninety Nine Restaurant before?  Yes X   No

Have you been convicted of a felony within the last 7 years? Yes   No        If yes, please explain: _____

(Note: a conviction may not necessarily disqualify an applicant from employment)

If hired, can you provide proof that you are eligible to work in the US?  Yes X   No

**EMPLOYMENT** – Please list 3 of your most recent jobs. Start with the most recent.

Company 1: **99 Restaurant**                    Position: **Food Server**

Dates from:  **07-31-2000**            To: **10-06-2012**        Supervisor: **Karl Money**

City:  **Salem**            State: **MA**        Phone Number: **603-893-5596**

Rate of Pay: _____        Reason for leaving: **I didn't want to commute since I moved out of NH**

Eligible for Rehire?  Yes X   X No        May we contact your former employer?  Yes X   No

Company 2: _____                Position: _____

Dates from: _____            To: _____        Supervisor: _____

City: _____            State: _____        Phone Number: _____

Rate of Pay: _____        Reason for leaving: _____

Eligible for Rehire?  Yes   No        May we contact your former employer?  Yes   No

Company 3: _____                Position: _____

Dates from: _____            To: _____        Supervisor: _____

City: _____            State: _____        Phone Number: _____

Rate of Pay: _____        Reason for leaving: _____

Eligible for Rehire?  Yes   No        May we contact your former employer?  Yes   No

## EDUCATION

High School:  **MAGISTERIO DE CUNDINAMARCA BOGOTA COLOMBIA**        Graduated:  Yes X   No        College: **NORTHERN ESSEX COMM COLLEGE**        Graduated:   Yes X   No

Other: _____        Graduated: Yes   No

## APPLICATION SIGN OFF:

The Ninety Nine Restaurant and our team members utilize an Open Door Policy and Alternative Dispute Resolution (ADR) to settle any and all employment disputes/conflicts. As a team member, you are required to utilize this process if any dispute/conflict should arise. Any controversy or claim arising out of or relating to 1) this application, or the breach thereof; 2) if hired, my compensation, employment or termination of employment (including but not limited to any statutory claims such as discrimination) shall be settled by mediation and/or arbitration administered by the American Arbitration Association. I understand that the AAA administers mediation/arbitration under its National Rules for the Resolution of Employment Disputes, and judgement upon the award rendered by the mediator(s) or arbitrator(s) may be entered by any court having jurisdiction thereof.

Signature:  **CONSTANZA KIRAN**            Date: **2012-11-15**

The Age Discrimination Employment Act prohibits discrimination on the basis of age with respect to individuals who are at least 40 years of age.
I certify that the facts contained in this application are true and complete to the best of my knowledge. I authorize investigations of all statements contained in this application for employment as may be necessary in arriving at an employment decision and release all parties from all liability. In the event of employment, I understand that false statements on this application shall be grounds for dismissal. I understand and agree that if hired, my employment is for no definite period and may, regardless of the date of payment of my wages and salary be terminated at any time without prior notice. I also understand that I am required to abide by all rules and regulations of the Ninety Nine Restaurant.

Signature:  **CONSTANZA KIRAN**            Date: **2012-11-15**

ADD. 7

**Will the Ninety Nine be upset if I use OPEN DOOR, MEDIATION or ARBITRATION to settle a dispute?**

Absolutely not! The reason the Ninety Nine is offering this benefit is for employees to take advantage of it. Treating People Right means giving each employee fair and respectful treatment at all times. Letting us know there is an issue through the Open Door process allows both parties to discuss and hopefully resolve the issue to both parties' satisfaction.

**Why is arbitration better than going through litigation?**

Litigation can be a painful process as it is often hostile, stressful, expensive (both to the company and the employee) and drawn out over several years. Arbitration is far less expensive and is typically over in a matter of months.

**Do I give up my legal rights by using arbitration instead of litigation?**

Your rights remain protected. You are simply agreeing to use a mediator and/or arbitrator instead of a judge and jury. The arbitrator can award everything a judge or jury could award you in court. Your rights are protected without the years of complicated, expensive, and time consuming lawsuits.

**Do I have to hire a lawyer to go through mediation or arbitration?**

No, you do not have to hire or pay a lawyer. If you decide to proceed before a mediator or arbitrator without a lawyer, the Ninety Nine will also proceed without a lawyer.

**How do I get more information if I need to proceed with mediation or arbitration?**

Again, the first step is going through the Open Door Policy. To initiate mediation or arbitration, call Human Resources and request a copy of the "National Rules for the Resolution of Employment Disputes" and a "Request for Mediation/Arbitration form". Once you complete this form, send it back to Human Resources along with your bank check or money order (for the appropriate amount) made payable to "American Arbitration Association". Your request form along with all other necessary documentation will be forwarded to the American Arbitration Association for processing. (Please note: AAA Does NOT accept personal checks).

**Now that I know about ADR, what do I do now?**

Each employee should sign the ADR agreement and it will be kept in your employee file. The vast majority of our employees will never need to use ADR. However, if you find yourself in a situation, which requires ADR, it is comforting to know that you have a safe, confidential, quick and easy method to address workplace disputes. Besides that, there is nothing else for you to do.

## Alternative Dispute Resolution
*The natural evolution of "We Treat People Right"*

ADD. 8

---

Continuing our Tradition and Mission Statement of
"We Treat People Right"
With "A Passion to Serve"

# Alternative

# Dispute

# Resolution

*The smarter way to resolve employment disputes*

To further support our mission statement of Treating People Right, Ninety Nine Restaurant is introducing our newest benefit: ALTERNATIVE DISPUTE RESOLUTION (ADR).

<u>What is ADR?</u>
♦ It stands for Alternative Dispute Resolution.
♦ It is our way of resolving employment disputes or conflicts in the workplace. It entails three steps:

        1) Open Door Policy
        2) Mediation
        3) Arbitration

<u>Why are we introducing ADR to all Ninety Nine employees?</u>
♦ Our mission statement supports this: We Treat People Right! As the Ninety Nine is rapidly growing, we bring hundreds of new employees into our family each year. The Ninety Nine believes each employee deserves to be treated with respect and in a fair manner at all times.
♦ As in any workplace, there can be conflicts - times when people disagree. It's important to clear up any disputes as quickly as possible. By resolving the conflict quickly, we prevent it from becoming a bigger issue for both the employee and the company.

<u>What do we mean by OPEN DOOR POLICY?</u>
    The Ninety Nine has always had an Open Door Policy - the opportunity to voice your concerns. It's important however, to solve any issue you might have right in your own restaurant at the level closest to you!
♦ Have an issue with another employee or manager? First try to resolve it with this person directly.
♦ If this is uncomfortable or you don't get the result you're looking for...go to your General Managing Partner, and then if needed, your Operations Director. He/she will obtain all the facts and strive to settle your issue in a fair and equitable manner.
♦ If at any point, you do not feel you are being heard, or are uncomfortable speaking with your General Managing Partner or Operations Director, pick up the phone and call the Ninety Nine Human Resources Hot Line at: 1-877-293-0299.
♦ Once you've taken these steps, and you still think your situation has not been handled to your satisfaction, contact <u>Bob Luz, Chief Human Resource Officer or your respective Regional Vice President, Jon Freedman or Jim Kiley at (781) 933-8999</u> in the Woburn, MA Home Office.
♦ If after thorough discussion of the matter, you feel the issue has not been resolved, you may request a meeting with <u>John Grady, Ninety Nine Restaurant President.</u>
♦ **The OPEN DOOR POLICY is the BEST way to resolve any issue.**

<u>What if the OPEN DOOR POLICY doesn't work?</u>
    While the Open Door policy resolves most disputes/conflicts, it may not resolve every one of them. If after taking these steps, you feel your issue is unresolved, you have two options within ADR: MEDIATION and ARBITRATION.

<u>What is MEDIATION?</u>
♦ MEDIATION is when a third party, a non-biased mediator, listens to both parties and works to create a solution where everyone is satisfied.
♦ In mediation, you submit your claim to a mediator, provided through the American Arbitration Association (AAA). AAA is a public service organization that helps employees and businesses resolve their conflicts.
♦ The mediator will listen to both parties and make suggestions to try to bring them to an agreement that is fair and acceptable to everyone.
♦ The mediator can only make a suggestion for resolution - the decision is not final or binding unless everyone agrees to it.
♦ Mediation is voluntary, very informal and inexpensive. More often than not, it works! If both parties are looking for a solution (not a fight!), it is often successful.

<u>If I'm not satisfied after mediation, what do I do?</u>
    If after mediation, your dispute is not resolved and you want to take it further, <u>ARBITRATION</u> is the next step.

<u>What is ARBITRATION?</u>
♦ Arbitration is the substitute for litigation. It uses an independent, impartial expert provided through AAA to hear both sides of the dispute.
♦ Arbitration is more formal than mediation, but less formal than the court system! The arbitrator has all the legal powers of a judge and can award a financial settlement just like a judge or jury.
♦ The arbitrator's decision is <u>FINAL and BINDING.</u>

<u>WHAT'S IN IT FOR ME to use mediation or arbitration?</u>
♦ COST - You will only pay a nominal amount of AAA's fee - far less than you'd pay in court fees. <u>$25 for mediation and $50 for arbitration.</u> The Ninety Nine pays all remaining charges.
♦ TIME - Mediation is usually resolved within 3-6 weeks and arbitration within 3-6 months. Normal litigation takes years! If an employee has not been treated fairly, and is awarded a financial settlement, there is no attorney looking for his/her fifty- percent split!
♦ RELATIONSHIPS - You may maintain the "family" ties you have built at the Ninety Nine because both parties are looking for a SOLUTION.
♦ LESS HASSLE - Because it is less formal and demanding, it reduces stress for everyone.

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| CONSTANZA KIRAN, on behalf of herself and all others similarly situated, Claimant | ) ) ) |
| | ) |
| v. | ) |
| | ) |
| 99 RESTAURANTS, LLC, Respondent | ) ) |

### CLASS DEMAND

1.  Claimant Constanza Kiran brings this arbitration on behalf of herself and all others similarly situated.  She brings claims under Massachusetts law, including violations of the Tips Law, M.G.L. c. 149, § 152A, and resulting minimum wage violations under M.G.L. c. 151, § 7; under New Hampshire law, RSA § 279; and under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*  Ms. Kiran seeks, among other forms of relief, and on behalf of herself and all others similarly situated, recovery of tips, minimum wages, multiple or liquidated damages, interest, and attorneys' fees and costs, as provided for by law.

### AAA Jurisdiction

2.  The American Arbitration Association has jurisdiction over this demand by virtue of an employer-promulgated plan set out, *inter alia*, in respondent's employment application.

### Parties

3.  Claimant Constanza Kiran is an adult resident of Woburn, Massachusetts.

4.  Respondent 99 Restaurants, LLC, is a limited liability company doing business as the Ninety Nine Restaurant and Pub ("Ninety Nine").  The Ninety Nine has restaurants throughout Massachusetts, New Hampshire, and other states in the northeast.

## Facts

5. Ms. Kiran worked as a server for the Ninety-Nine Restaurant in Salem, New Hampshire from July 2000 through October 2012, and for the Ninety-Nine Restaurant in Wilmington, Massachusetts from November 2013 through May 2013.  On information and belief, at the Salem, NH restaurant, there are typically about 40-45 servers on staff.  On information and belief, at the Wilmington, MA restaurant, there are typically about 30-35 servers on staff.

6. When working as a server at both locations, Ms. Kiran was paid the tipped minimum wage, most recently $2.63 per hour.

7. While working as a server at both locations, Ms. Kiran was required to share her tips with dishwashers.  The amount that Ms. Kiran was required to pay to dishwashers was typically one percent of sales.  Ms. Kiran was informed about this policy during her initial orientation and training periods.

8. In the Wilmington, MA location, one server each shift was tasked with collecting tip-outs from all servers for the dishwashers.  On one occasion when Ms. Kiran was tasked with that responsibility, she was unable to collect the tip-outs given how busy she was.  She was reprimanded by the General Manager and warned that if she failed to collect money for the dishwashers again, she would be penalized.  Around the same time, Ms. Kiran learned that another server had failed to collect tip-outs for dishwashers as required, and that server was punished by having a table taken away from her in a subsequent shift.

9. Ms. Kiran has satisfied all conditions prerequisite to bringing this claim.

**Class Allegations**

10. Ms. Kiran brings this action on behalf of all similarly situated servers. The number of servers is so numerous that joinder of separate arbitrations on behalf of all them is impracticable.

11. There are questions or law or fact common to the class or sub-classes, including the legality of the 99's tip-sharing policies and practices and the appropriate remedies.

12. The claims of Ms. Kiran are typical of the claims of other class members.

13. Ms. Kiran and her counsel will fairly and adequately protect the interests of the class. Ms. Kiran has no conflicts with the interests of the class. Her counsel is experienced in wage and hour class action litigation.

14. On information and belief, each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by Ms. Kiran.

15. The questions or law or fact common to the members of the class predominate over any questions affecting only individual members.

16. Class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy.

**Claims**

**COUNT I – MASSACHUSETTS LAW**

17. Under Massachusetts law, "[n]o employer or person shall cause, require or permit any wait staff employee, service employee, or service bartender to participate in a tip pool through which such employee remits any wage, tip or service charge, or any portion thereof, for distribution to any person who is not a wait staff employee, service employee, or service bartender." M.G.L. c. 149, § 152A(c). As set forth above, the Ninety-Nine has

3

violated this provision, so Ms. Kiran and all others similarly situated are entitled to recover, among other things, damages for all money they unlawfully paid to dishwashers. This claim is brought pursuant to M.G.L. c. 149, § 150.

18. Under Massachusetts law, an employer is not permitted to pay a tipped minimum wage unless "all tips received by such employee have been retained by the employee," except where there is a "pooling of tips among employees who customarily and regularly receive tips." M.G.L. c. 151, § 7. As set forth above, the Ninety-Nine has violated this provision, so Ms. Kiran and all others similarly situated are entitled to, among other things, the difference between the tipped minimum wage that they were paid and the regular minimum wage for all applicable hours. This claim is brought pursuant to M.G.L. c. 151, § 20.

## COUNT II – NEW HAMPSHIRE LAW

19. Under New Hampshire law, "[t]ips are wages and shall be the property of the employee receiving the tip and shall be retained by the employee, unless the employee voluntarily and without coercion from his or her employer agrees to participate in a tip pooling or tip sharing arrangement." RSA § 279:26-b. As set forth above, the Ninety-Nine has violated this provision, so Ms. Kiran and all others similarly situated are entitled to recover, among other things, damages for all money they paid to dishwashers and the difference between the tipped minimum wage that they were paid and the regular minimum wage for all applicable hours. This claim is brought pursuant to RSA § 279:29.

## COUNT III – FAIR LABOR STANDARDS ACT

20. Under the FLSA, employers may pay a sub-minimum wage to tipped employees, but only if "all tips received by [a tipped] employee have been retained by the employee,"

4

with an exception for "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m). As set forth above, the Ninety-Nine has violated this provision, so Ms. Kiran and all others similarly situated are entitled to, among other things, the difference between the tipped minimum wage that she was paid and the regular minimum wage for all applicable hours. This claim is brought pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Ms. Kiran requests the following relief:

A. That the arbitrator issue a partial clause construction award ruling that class arbitration is permitted;

B. That the arbitrator certify the following classes or sub-classes of servers:

    a. A class of all servers who worked at any Ninety-Nine restaurant in Massachusetts, within the applicable limitations period, where servers were caused, required, or permitted to remit any tips, or any portion thereof, for distribution to any person who is not a wait staff employee, service employee, or service bartender;

    b. A class of all servers who worked at any Ninety-Nine restaurant in New Hampshire, within the applicable limitations period, where servers involuntarily, or as a result of coercion, shared their tips in violation of New Hampshire law;

    c. A class of all servers who worked at any Ninety-Nine restaurant where servers shared their tips with employees who do not customarily and regularly receive tips, within the applicable time period, in violation of the FLSA, 29 U.S.C. § 203(m).

5

C.  Award all damages available under applicable law;

D.  Award multiple or liquidated damages, to the fullest extent permitted under

applicable law;

E.  Award attorneys' fees, costs, and interest; and

F.  Award such other relief as the arbitrator deems just and proper.

CONSTANZA KIRAN, on behalf of herself
and all others similarly situated,

Stephen Churchill, BBO#564158
Hillary Schwab, BBO#666029
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
617-607-3260
steve@fairworklaw.com
hillary@fairworklaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| 99 RESTAURANTS, LLC, | ) |
| | ) |
| PETITIONER, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 1: 13-13048-WGY |
| COSTANZA KIRAN, on behalf of herself | ) |
| and all others similarly situated, | ) |
| | ) |
| RESPONDENT. | ) |
| | ) |

## PETITIONER'S NOTICE OF APPEAL

Pursuant to Fed.R.App.P. 3 and 9 U.S.C. § 16(a), Petitioner 99 Restaurants, LLC

hereby gives notice that it appeals to the United States Court of Appeals for the First Circuit

from the District Court's January 13, 2014 Order denying the Petition to Stay Arbitration and to

Compel Respondent to Arbitrate Claims on an Individual Basis (Docket No. 12).

Respectfully submitted,

/s/ Michael Mankes
Michael Mankes, BBO #662127
**LITTLER MENDELSON, P.C.**
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6006
Fax 617.737.0052
mmankes@littler.com

*Attorney for the Petitioner, 99 Restaurants, LLC*

Dated:  January 29, 2014

ADD. 16

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

| | | |
|---|---|---|
| 99 RESTAURANTS, LLC., | ) | |
| | ) | |
| PETITIONER, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| COSTANZA KIRAN, on behalf of herself | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| RESPONDENT. | ) | |
| | ) | |

### AFFIDAVIT OF BRANT FAHLE

Brant Fahle, being duly sworn, states:

1.      My name is Brant Fahle. I am the Human Resources Director for Petitioner 99 Restaurants, LLC ("99 Restaurants"). This affidavit is based on personal knowledge unless stated otherwise. I am of legal age and am under no disability.

2.      Respondent Constanza Kiran ("Kiran") was hired by 99 Restaurants on November 20, 2012 as a server at its Wilmington, Massachusetts location, Restaurant #30075. She had been previously employed as a server at 99 Restaurants' Salem, New Hampshire location, Restaurant #10026, from July 31, 2000 through October 6, 2012. Kiran was an at-will employee of 99 Restaurants.

3.      As the Human Resources Director, I am familiar with the number of employees and number of restaurants implicated in Kiran's Class Demand filed with the American Arbitration Association ("AAA"). The arbitration action initiated by Kiran seeks to establish a class of over 6,000 servers who worked across a network of over 100 restaurants in multiple states.

4.     I am familiar with the contents of Kiran's personnel file, including Kiran's arbitration agreement and her electronic signature assenting to its terms.

5.     As part of 99 Restaurants' standard new-hire paperwork, all employees undergo a new-hire orientation process. At the time that Kiran was hired at the Salem location, 99 Restaurants' new-hire orientation process included a review of various employment-related documents, including an arbitration agreement, which requires that all employment-related disputes must be submitted to binding arbitration instead of litigation. A true and accurate copy the arbitration Agreement ("the Agreement") signed by Kiran on December 3, 2003 is attached as **Exhibit B**. The Agreement was kept in Kiran's personnel file in the regular course of business. When Kiran signed the Agreement on December 3, 2003, execution of the Agreement was <u>not</u> a term and condition of her employment.

6.     At the time Kiran was rehired to work at the Wilmington, Massachusetts location, 99 Restaurants' new-hire orientation process included an electronic review of various employment-related documents, including an arbitration agreement, which requires that all employment-related disputes must be submitted to binding arbitration instead of litigation. A true and accurate copy of this arbitration agreement is attached as **Exhibit C**.

7.     As a newly rehired employee with 99 Restaurants, Kiran participated in the new-hire orientation process, and was provided an opportunity to read the arbitration agreement, and to express her consent to its terms by clicking a button stating "I Agree" to the terms of the arbitration agreement. Employees are not permitted to continue with the orientation program until they express their consent to the terms of the Agreement.

8.     Once the employee clicks "I Agree," the orientation program captures an electronic signature, the Employee Number, which preserves and maintains a record of the

2

employee's consent to the arbitration agreement.   A true and accurate copy of the confirmation of Kiran's electronic signature is attached as **Exhibit D**.

9.      As part of Kiran's new-hire paperwork, she executed the arbitration agreement on November 23, 2012, as evidenced by her electronic signature at **Exhibit D**.

11.     In addition to the arbitration agreement, 99 Restaurants employees are also given access to a booklet describing its alternative dispute resolution policy, entitled "Alternative Dispute Resolution: The smarter way to resolve employment disputes" ("the ADR Booklet").   A true and accurate copy of the 2013 edition of the ADR booklet is attached as **Exhibit E**.

Further affiant sayeth naught.

I hereby affirm on this 27th day of November, 2013 under penalty of perjury of the laws of the United States that the foregoing affidavit is true and accurate.

_____
Brant Fahle

ADD. 19