NO. 14-1135

_____

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

_____

99 RESTAURANTS, LLC,

*Petitioner-Appellant*,

v.

CONSTANZA KIRAN, on behalf of
herself  and all others similarly situated,

*Respondent-Appellee.*

_____

APPEAL FROM ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

_____

REPLY BRIEF OF PETITIONER-APPELLANT 99 RESTAURANTS, LLC

_____

Michael Mankes, MA Bar No. 662127
mmankes@littler.com
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Telephone: 617.378.6000
Facsimile: 617.737.0052

Burt M. Rublin
rublin@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street
51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.864.8116
Facsimile: 215.864.9783

*Attorneys for Petitioner-Appellant,
99 Restaurants, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................... 1

ARGUMENT .......................................................................................... 2

I.   Neither The Supreme Court Nor This Court Has Held That "Class
     Arbitrability Is For The Arbitrator To Decide" ............................... 2

     A.   Supreme Court Decisions ...................................................... 2

     B.   First Circuit Decisions .......................................................... 9

     C.   Decisions From Other Courts .............................................. 11

II.  The Parties' Arbitration Agreements Do Not "Clearly and
     Unmistakably" Provide For The Arbitrator To Decide Class
     Arbitrability ....................................................................... 14

III. The Parties Did Not Agree to Arbitrate on a Class Basis ............ 19

CONCLUSION ...................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adkins v. Labor Ready, Inc.,*
303 F.3d 496 (4th Cir. 2002) ........................................................................................27

*Anderson v. Comcast Corp.,*
500 F.3d 66 (1st Cir. 2007) ..........................................................................................11

*Anwar v. Fairfield Greenwich Limited,*
950 F.Supp.2d 633 (S.D.N.Y. 2013) ............................................................................24

*AT&T Mobility LLC v. Concepcion,*
131 S. Ct. 1740 (2011) ....................................................................4, 5, 26, 27, 28

*AT&T Technologies Inc. v. Communications Workers,*
475 U.S. 643 (1986) ......................................................................................................15

*BG Group PLC v. Republic of Argentina,*
134 S. Ct. 1198 (March 5, 2014) ..............................................................................7, 8

*Brigade Leveraged Capital Structures Fund LTD v. Pimco Income Strategy
Fund,* 466 Mass. 368, 995 N.E.2d 64, 69 (2013) ........................................................21

*Carter v. Countrywide Credit Indus., Inc.,*
362 F.3d 294 (5th Cir. 2004) ........................................................................................27

*Chassen v. Fidelity National Financial, Inc.,*
2014 U.S. Dist. LEXIS 6227 (D. N.J. Jan. 17, 2014) ..................................................13

*Corrigan v. Domestic Linen Supply,*
2012 U.S. Dist. LEXIS 100961 .....................................................................................27

*Corrigan v. Domestic Linen Supply Co.,*
2012 WL 2977262 (N.D. Ill. July 20, 2012) ............................................................13, 14

*DeBose v. Smith & Wollensky Rest. Group, Inc.,*
2013 WL 5487939 (S.D. Tex. Sept. 30, 2013) ............................................................24

*D.R. Horton v. NLRB,*
737 F.3d 344 (5th Cir. 2013) .............................................................................24, 26, 27

|  | Page(s) |
|---|---|

*Ehleiter v. Grapetree Shores Inc.*,
   482 F.3d 207 (3d Cir. 2007) .......................................................15

*Eshagh v. Terminix Int'l Co. L.P.*,
   2012 WL 1669416 (E.D. Cal. May 11, 2012) ...........................14

*Fantastic Sams Franchise Corp. v. FSRO Ass'n*,
   683 F.3d 18 (1st Cir. 2012) ...............................................9, 10, 28

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ......................................................7, 15, 16

*Goodale v. George S. May Intern. Co.*,
   2011 WL 1337349 (N.D. Ill. April 5, 2011) ............................14

*Green Tree Financial Corp. v. Bazzle*,
   539 U.S. 444 (2003) ..................................................2, 3, 10, 11

*Hickey v. Brinker Int'l Payroll Co.*,
   2014 U.S. Dist. LEXIS 20387 (D. Colo. Feb. 18, 2014) ........27

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) .......................................................4, 5, 8, 15

*Huffman v. The Hilltop Companies*,
   747 F.3d 391 (6th Cir. 2014) ..........................................11, 12, 27

*In re A2P SMS Antitrust Litigation*,
   2014 U.S. Dist. LEXIS 74062 (S.D.N.Y. May 29, 2014)...........10, 12, 13

*Jock v. Sterling Jewelers, Inc.*,
   646 F.3d 113 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1742 (2012).....................12

*Karp v. CIGNA Healthcare, Inc.*,
   882 F. Supp. 2d 199 (D. Mass. 2012) ......................................11

*Kristian v. Comcast Corp.*,
   446 F.3d 25 (1st Cir. 2006)................................................6, 7, 8

*Kuehner v. Dickinson & Co.*,
   84 F.3d 316 (9th Cir. 1996) ....................................................27

iii

**Page(s)**

*Mork v. Loram Maintenance of Way, Inc.*,
   844 F. Supp. 2d 950 (D. Minn. 2012)................................................................14

*Oxford Health Plans, LLC v. Sutter*,
   133 S. Ct. 2064 (June 10, 2013)................................................2, 3, 4, 23, 24

*Parvataneni v. E\*Trade Financial Corp.*,
   967 F.Supp.2d 1298 (N.D. Cal. 2013).............................................................24

*Penobscot Nation v. Georgia-Pacific Corp.*
   254 F.3d 317 (1st Cir. 2001) ..............................................................................3, 4

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
   673 F.3d 221 (3d Cir. 2012) ...............................................................................13

*Reed Elsevier v. Crockett*,
   2012 U.S. Dist. LEXIS 23947 (S.D. Ohio Feb. 24, 2012),
   *aff'd*, 734 F.3d 594 (6th Cir. 2013), *cert. denied*, 2014
   U.S. LEXIS 3516 (May 19, 2014).................................................................8, 22

*Reed Elsevier v. Crockett*,
   734 F.3d 594 (6th Cir. 2013), *cert. denied*, 2014 U.S. LEXIS 3516 (May
   19, 2014)........................................................................................... passim

*Reed v. Metropolitan Univ.*,
   681 F.3d 630 (5th Cir. 2012), *abrogated in part on other grounds*, *Oxford
   Health Plans v. Sutter*, 133 S. Ct. 2064 (2013) ........................23, 24, 25, 26

*Rent-A-Center, West Inc. v. Jackson*,
   561 U.S. 63 (2010).........................................................................................15, 16

*Riley Manufacturing Co. v. Anchor Glass Container Corp.*,
   157 F.3d 775 (10th Cir. 1998).............................................................................17

*Safra Nat'l Bank of New York v. Penfold Inv. Trading, Ltd.*,
   2011 WL 1672467 (S.D.N.Y. Apr. 20, 2011)..................................................14

*Skirchak v. Dynamics Research Corp.*,
   508 F.3d 49 (1st Cir. 2007)............................................................................10, 11

*Smith & Wollensky Restaurant Group v. Passow*,
   831 F.Supp.2d 390 (D. Mass. 2011) .................................................................24

**Page(s)**

*Smith v. BT Conferencing, Inc.*,
  2013 WL 5937313 (S.D. Ohio Nov. 5, 2013)...................................................22, 24

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) .............................................................................. passim

*Sutherland v. Ernst & Young, LLP*,
  726 F.3d 290 (2d Cir. 2013)...............................................................................27

*Vilches v. The Travelers Cos., Inc.*,
  413 Fed. Appx. 487 (3d Cir. 2011)....................................................................13

*Walthour v. Chipio Windshield Repair*,
  745 F.3d 1326 (11th Cir. 2014) .........................................................................27

**STATE CASES**

*American Commercial Finance Corp. v. Seneca Ins. Co.*,
  66 Mass.App. Ct. 830, 850 N.E.2d 1114 (2006)...................................20, 21

*Brigade Leveraged Capital Structures Fund LTD v. Pimco Income
  Strategy Fund*, 466 Mass. 368, 995 N.E.2d 64 (2013) ..............................21

*Colorio v. Marx,*
  72 Mass.App.Ct. 382, 892 N.E.2d 356 (2008) ..........................................20

*Gustafson v. Wachusett Regional School District*,
  64 Mass. App. Ct. 802, 836 N.E.2d 1097 (2005)...................................21, 22

*Kinecta Alternative Financial Solutions, Inc. v. Superior Court*,
  205 Cal. App. 4th 506, 140 Cal. Rptr. 3d 347 (2012)..................................20

*Machado v. System4 LLC,*
  465 Mass. 508, 989 N.E.2d 464 (2013)..............................................26, 27

*Nelsen v. Legacy Partners Residential, Inc.*,
  207 Cal. App. 4th 1115, 114 Cal. Rptr. 3d 198 (2012)..............................20

*Somerset Savings Bank v. Chicago Title Ins. Co.*,
  420 Mass. 422, 649 N.E.2d 1123 (1995) ....................................................27

**Page(s)**

**FEDERAL STATUTES**

9 U.S.C. § 10(a)(4) ...........................................................................5, 23, 24

**OTHER AUTHORITIES**

AAA National Rules for the Resolution of Employment Disputes.......................18, 19

AAA: Drafting Dispute Resolution Clauses: A Practical Guide ............................... 25

AAA Supplementary Rules ........................................................................19

Christopher R. Drahozal & Peter B. Rutledge, *Contract and Procedure*, 94
  Marq.L.Rev. 1103 (2011) ........................................................................24, 25

JAMS: *JAMS Clause Workbook – Standard Clauses* .................................................... 25

## INTRODUCTION

The arguments made in the brief filed by appellee Constanza Kiran are both factually and legally unfounded. Contrary to the heading of her very first argument, there is no "binding precedent" from either the Supreme Court or this Court holding that "class arbitrability is for the arbitrator to decide." (Kiran Br. at p. 7). The Sixth Circuit's very recent decision in *Reed Elsevier v. Crockett*, 734 F.3d 594 (6th Cir. 2013), *cert. denied*, 2014 U.S. LEXIS 3516 (May 19, 2014) holding that the availability of class arbitration is a "gateway" issue of arbitrability that courts should presumptively decide comports fully with Supreme Court precedents, and this Court should reach the same conclusion. Also, Kiran's fallback argument that this presumption is overcome here because the parties supposedly agreed that an arbitrator should decide the availability of class arbitration finds no support in the language of the agreements. Indeed, Kiran has not come anywhere close to satisfying her heavy burden of proving with the requisite "clear and unmistakable evidence" that the parties agreed to arbitrate class arbitrability. Finally, Kiran's claim that the parties' agreements should be construed as authorizing class arbitration is refuted by both the plain language of the agreements and numerous decisions that have squarely rejected the very same arguments she makes here.

**ARGUMENT**

**I. Neither The Supreme Court Nor This Court Has Held That "Class Arbitrability Is For The Arbitrator To Decide"**

**A. <u>Supreme Court Decisions</u>**

Kiran's brief relies heavily on the plurality decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003). (Kiran Br. at pp. 15-17). However, that plurality opinion hardly constitutes "persuasive authority" (*id.* at pp. 15, 17) in the wake of *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 678-680 (2010) and *Oxford Health Plans, LLC v. Sutter*, 133 S. Ct. 2064, 2068 n. 2 (June 10, 2013).

In *Stolt-Nielsen*, the Supreme Court repeatedly emphasized that "[w]hen *Bazzle* reached this Court, no single rationale commanded a majority." 559 U.S. at 678, 679. Indeed, even though the parties in *Stolt-Nielsen* had agreed that the arbitration panel should decide whether their contract permitted class arbitration, the Court nevertheless went out of its way to point out that the *Bazzle* plurality decision did not resolve the issue of whether courts or arbitrators should decide class arbitrability:

> Unfortunately, the opinions in *Bazzle* appear to have baffled the parties in this case at the time of the arbitration proceeding. For one thing, the parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration … In fact, however, only the plurality decided that question.

*Id.* at 680.

In *Oxford Health*, the Court went even further in casting substantial doubt on whether the plurality decision in *Bazzle* represents "persuasive authority," as claimed by Kiran:

> We would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called 'question of arbitrability.' Those questions – which include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy – are presumptively for courts to decide . . . *Stolt-Nielsen* made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability . . . But this case gives us no opportunity to do so because Oxford agreed that the arbitrator should determine whether its contract with Sutter authorized class procedures[1] . . . Indeed, Oxford submitted that issue to the arbitrator not once, but twice – and the second time after *Stolt-Nielsen* flagged that it might be a question of arbitrability.

*Oxford Health*, 133 S. Ct. at 2068 n.2 (emphasis added).[2]

---

[1]   Kiran is grasping straws when she argues that "[i]t is instructive" that in *Oxford Health*, "the parties *did not dispute* that the arbitrator should decide class arbitrability in the first instance." (Kiran Br. at p. 12) (italics in original). The parties' consent to having that issue decided by the arbitrator in *Oxford Health* provides no guidance whatsoever on the question of whether class arbitrability is for courts or arbitrators to decide. It is equally irrelevant that there are "dozens of decisions on the AAA's online docket" where arbitrators construed agreements to determine if they permitted class arbitration. (Kiran Br. at pp. 13, 29).

[2]   This Court has not hesitated to part company with Supreme Court plurality decisions where, as here, "[i]t is not clear how firmly the . . . plurality rule is

(continued…)

A dispute is presumptively reserved for determination by courts, not arbitrators, if the "contracting parties would likely have expected a court to have decided the gateway matter." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). The Supreme Court has strongly suggested that the availability of class arbitration is <u>not</u> the kind of question that parties would likely have expected an arbitrator to decide because of the "fundamental" differences between bilateral and classwide arbitration. *Stolt-Nielsen*, 559 U.S. at 685-86; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750 (2011).

Perhaps the most important of these "fundamental" differences is the fact that "the commercial stakes of class-action arbitration are comparable to those of class-action litigation…though the scope of judicial review is much more limited." *Stolt-Nielsen*, 559 U.S. at 686-87. In *Concepcion*, the Supreme Court emphasized that "class arbitration greatly increases risks to defendants" and "[a]rbitration is poorly suited to the higher stakes of class litigation." 131 S. Ct. at

---

(…continued)

endorsed by a majority of the Court." *Penobscot Nation v. Georgia-Pacific Corp.* 254 F.3d 317, 324 (1st Cir. 2001). It should be noted in this regard that one of the four Justices who joined the plurality opinion in *Bazzle* is no longer on the Court (Justice Souter). Moreover, Justice Alito, who joined the Court after *Bazzle* was decided, wrote a concurring opinion in *Oxford Health* in which he stated that "unlike petitioner [Oxford Health], absent members of the plaintiff class never conceded that the contract authorizes the arbitrator to decide whether to conduct class arbitration. It doesn't." 133 S. Ct. at 2071.

1752. In litigation, "a defendant may appeal a certification decision on an interlocutory basis and, if unsuccessful, may appeal from a final judgment as well." *Id.* By contrast, the requirements for judicial vacatur of an arbitral award under 9 U.S.C. § 10(a)(4) are very onerous, as that provision "focuses on misconduct rather than mistake" by the arbitrators. *Id.*

The Court noted in *Concepcion* that "in class-action arbitration huge awards (with limited judicial review) will be entirely predictable, thus rendering arbitration unattractive…[R]equiring consumer disputes to be arbitrated on a classwide basis will have a substantial deterrent effect on incentives to arbitrate." *Id.* at n. 8. In sum, the Supreme Court concluded as follows:

> **We find it hard to believe that defendants would bet the company with no effective means of review…**

*Id*. at 1752 (emphasis added).

Just as it is "hard to believe" that a defendant would agree to "bet the company" in a class arbitration "with no effective means of review," it is equally hard to believe that a defendant "would likely have expected" an arbitrator to make the threshold determination of class arbitrability with no effective means of review. *Howsam*, 537 U.S. at 83. Thus, it is a gateway issue of arbitrability that courts should presumptively decide.

In light of the many "fundamental" differences between bilateral and class arbitration, the Sixth Circuit correctly recognized in *Reed Elsevier* as follows:

> [T]he question whether the parties agreed to classwide
> arbitration is vastly more consequential than even the
> gateway question whether they agreed to arbitrate
> bilaterally.  An incorrect answer in favor of classwide
> arbitration would 'forc[e] parties to arbitrate' not merely
> a single 'matter that they may well not have agreed to
> arbitrate[,]' *Howsam*, 537 U.S. at 84, but thousands of
> them.

734 F.3d at 599 (emphasis added).

In *Kristian v. Comcast Corp.*, 446 F.3d 25, 53-55 (1st Cir. 2006), this

Court expressly held that the enforceability of a class action waiver in an

arbitration agreement is a "question of arbitrability" that should be decided by

courts, not arbitrators.  Significantly, this Court **rejected** Comcast's argument that

**"class actions are a procedural issue left properly for an arbitrator to decide."**

*Id*. at 53 (emphasis added).  Instead, this Court found that a question of arbitrability

was presented for courts to decide because of the significant practical and

economic ramifications of class certification:

> While Comcast is correct when it categorizes the class
> action (and class arbitration) as a procedure for
> redressing claims – and not a substantive or statutory
> right in and of itself – **we cannot ignore the substantive
> implications of this procedural mechanism**.

*Id*. at 54 (emphasis added).

That reasoning is very similar to that utilized by the Sixth Circuit last

year in *Reed Elsevier*.  The class action waiver issue addressed by this Court in

*Kristian* is, at bottom, functionally equivalent to the class action issue presented

6

here – can the arbitration proceed on a classwide basis?  There is no good reason to hold that courts should decide the enforceability of class action waivers, but arbitrators should decide whether the parties' agreement allows for class arbitration.  After all, "the substantive implications of this procedural mechanism" are presented by <u>both</u> of these questions, which are opposite sides of the same coin. *Kristian*, 446 F.3d at 54.  Each is a question of arbitrability, as parties "reasonably would have thought a judge, not an arbitrator, would decide" them.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

In *Stolt-Nielson*, similar to the reasoning utilized by this Court in *Kristian* and by the Sixth Circuit in *Reed Elsevier*, the Supreme Court rejected the argument that the issue of whether an arbitration may proceed on a class basis is "merely" a question of procedure:  "The dissent minimizes these crucial differences [between bilateral arbitration and class arbitration] by characterizing the question before the arbitrators as being merely what 'procedural mode' was available to present AnimalFeeds' claims....If the question were that simple, there would be no need to consider the parties' intent with respect to class arbitration." 559 U.S. at 687.

The Supreme Court has explained that "gateway" questions of arbitrability that are presumptively for the courts to decide include, but are not limited to, "whether an arbitration clause in a concededly binding contract applies

to a particular type of controversy." *BG Group PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (March 5, 2014).  In *Reed Elsevier*, the trial court found that class arbitrability is a "gateway" issue because it was "being asked to resolve 'a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy' (*Howsam*, 537 U.S. at 84), to wit: whether the arbitration provisions in the parties' agreement apply to classwide arbitration." *Reed Elsevier v. Crockett*, 2012 U.S. Dist. LEXIS 23947 at *19 (S.D. Ohio Feb. 24, 2012), *aff'd*, 734 F.3d 594 (6th Cir. 2013), *cert. denied*, 2014 U.S. LEXIS 3516 (May 19, 2014).

By contrast, the Supreme Court stated in *BG Group* that arbitrators presumptively decide "disputes about the meaning and application of <u>particular procedural preconditions for the use of arbitration</u>," which "include the satisfaction of 'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate,'" as well as "claims of 'waiver, delay, or a like defense to arbitrability.'"  134 S. Ct. at 1207 (emphasis added).  Class arbitrability does not resemble <u>any</u> of these "procedural preconditions for the use of arbitration," and indeed it is a "vastly more consequential" issue than these "subsidiary questions" that are left for resolution by arbitrators.  *Reed Elsevier*, 734 F.3d at 598, 599.  *See also Kristian*, 446 F.3d at 54.

## B.    First Circuit Decisions

Kiran's contention that "[t]his Court has ruled that class arbitrability is

a question for the arbitrator" (Kiran Br. at p. 8) is groundless.  As anticipated,

Kiran relies principally on this Court's decision in *Fantastic Sams Franchise Corp.*

*v. FSRO Ass'n*, 683 F.3d 18 (1st Cir. 2012).  However, as explained in 99

Restaurants' opening brief (pp. 21-23), this Court repeatedly emphasized that

*Fantastic Sams* was an "associational action," which is very different from a class

action:

- "[W]e cannot say as a matter of law that FSRO's associational action in this case is equivalent to a class action;"

- "[T]he Supreme Court has not extended *Stolt-Nielsen* to the type of associational action brought by FSRO, which is different in many respects from the class action arbitration at issue in *Stolt-Nielsen*;"

- In contrast to *Stolt-Nielsen*, in *Fantastic Sams*, the plaintiff "does not seek to represent any absent parties, or any parties who are not signatories of the agreements at issue.  Nor does FSRO seek to bring any claims or obtain any relief not arising directly out of the agreements.  In this action, FSRO's members cannot, for example, obtain individualized damage awards, as in some class actions.  In addition, the arbitrators do not have to certify a class, or provide public notice of the arbitration, and the proceedings accordingly may remain confidential."

683 F.3d at 22, 23.  Therefore, this Court stressed that "FSRO's action in this case

does not appear to raise any of [the] concerns" about class arbitration that were

highlighted in *Stolt-Nielsen*.  *Id*. at 24.

In light of this Court's assiduous efforts to distinguish the "associational action" in *Fantastic Sams* from a class action, it is disingenuous for Kiran to claim that the distinction between an "associational action" and a class action "is of no consequence here." (Kiran Br. at p. 11 n.2).[3] It is equally disingenuous for Kiran to claim that, in *Fantastic Sams*, this Court "reaffirm[ed] the proposition that arbitrators should decide questions of class arbitrability" and held that "[t]he question of whether a silent arbitration agreement permits class arbitration 'is of the kind that an arbitrator would typically decide.'" (Kiran Br. at p. 11). This Court said no such thing, and Kiran's resort to a gross mischaracterization of the holding of *Fantastic Sams* speaks volumes as to the *bona fides* of her arguments.

Kiran has also relied on *Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 56 (1st Cir. 2007). *Skirchak* lends no support to Kiran's position here for two reasons. First, it was decided three years before *Stolt-Nielsen*, and had mistakenly concluded that the plurality decision in *Bazzle* "made clear" that class arbitrability is to be decided by an arbitrator. *Id.* at 56, citing *Bazzle*, 539 U.S. at

---

[3] Indeed, it is noteworthy that even one of the cases relied upon by Kiran has correctly recognized that *Fantastic Sams* is irrelevant to the issue presented here because it "did not raise the question of the availability of class arbitration but rather involved associational arbitration" and "distinguished class arbitration as raising different concerns." *In re A2P SMS Antitrust Litigation*, 2014 U.S. Dist. LEXIS 74062 at *29 (S.D.N.Y. May 29, 2014).

447.  Second, the Court's statement was *dicta*, as the parties in *Skirchak* had <u>agreed</u> that the Court should decide class arbitrability and not refer that issue to the arbitrator.  508 F.3d at 55.[4]

###    C.    <u>Decisions From Other Courts</u>

In stark contrast to the inapposite cases relied upon by Kiran, the Sixth Circuit's very recent decisions in *Reed Elsevier* and *Huffman v. The Hilltop Companies*, 747 F.3d 391 (6th Cir. 2014) are directly on point, and squarely held that "the question whether an arbitration agreement permits classwide arbitration is a gateway matter" for a court to resolve.  *Reed Elsevier*, 734 F.3d at 599.

Kiran contends that *Reed Elsevier* should be disregarded because it is supposedly "contrary to this Court's precedent."  (Kiran Br. at p. 17).  As demonstrated above, that assertion is incorrect, because this Court has not held that class arbitrability is for an arbitrator to decide.  Thus, Kiran's repeated claims to

---

[4]    In addition, Kiran cites the decision in *Anderson v. Comcast Corp.*, 500 F.3d 66, 72 (1st Cir. 2007).  The *Anderson* case not only long preceded *Stolt-Nielsen*, it is readily distinguishable because it addressed a very different issue, namely, whether enforcement of a class action waiver would prevent vindication of plaintiff's statutory rights to class relief under Chapter 93A of Massachusetts law.  Nor does Kiran's position find support in *Karp v. CIGNA Healthcare, Inc.*, 882 F. Supp. 2d 199, 206 n.6 (D. Mass. 2012), where the court enforced a class action waiver.  The parties had agreed that the court should decide that issue, and the footnote in *Karp* quoted by Kiran was *dicta*.

the contrary notwithstanding, 99 Restaurants is <u>not</u> asking this Court to "abrogate" its prior precedents.  (Kiran Brief at pp. 5, 17, 19).

Kiran also claims that *Reed Elsevier* was "wrongly decided" (*id*. at pp. 5, 17), but her brief utterly fails to demonstrate any conflicts or inconsistencies between that decision and Supreme Court precedents.  Quite to the contrary, as discussed in 99 Restaurants' opening brief, the Sixth Circuit's decision is well reasoned, comprehensive and entirely faithful to governing Supreme Court jurisprudence.

Kiran's effort to portray the Sixth Circuit's decisions in *Reed Elsevier* and *Huffman* as outliers is unavailing.  For example, she cites the decision in *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1742 (2012), but the parties there had <u>agreed</u> to let the arbitrator decide whether their contract permitted class arbitration, and the Second Circuit then reviewed the arbitrator's decision.  646 F.3d at 116.  As acknowledged in a different case relied upon by Kiran, "the issue before the Second Circuit was the substantive review, under the deferential standard of the FAA, of the arbitrator's ruling that class arbitration was available – not, as Plaintiffs would have it, whether this question was for the Court rather than the arbitrator to resolve in the first instance…"  *In re A2P SMS Antitrust Litigation*, 2014 U.S. Dist. LEXIS 74062 at *26.

Kiran also cites two Third Circuit decisions (one unpublished) in support of her assertion that "[n]o other circuit has followed the reasoning of *Reed Elsevier.*" (Kiran Br. at p. 18, *citing Quillon v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 232 (3d Cir. 2012) and *Vilches v. The Travelers Cos., Inc.*, 413 Fed. Appx. 487, 491-92 (3d Cir. 2011)). However, the *Quillon* and *Vilches* decisions did not refuse to follow *Reed Elsevier* - - they preceded it. Moreover, the precedential value of these rulings was questioned even by one of the cases relied upon by Kiran.[5] Compelling evidence that the Third Circuit has not yet resolved the class arbitrability issue in favor of Kiran's position is provided by a very recent trial court decision from within the Third Circuit, *Chassen v. Fidelity National Financial, Inc.*, 2014 U.S. Dist. LEXIS 6227 (D. N.J. Jan. 17, 2014). In *Chassen*, the court agreed with *Reed Elsevier* that "the issue of class-wide arbitration is a gateway issue" for courts to decide. *Id*. at *18.

There are also a number of other trial court decisions that have likewise held that courts, not arbitrators, should presumptively decide whether class arbitration is permitted. *See*, *e.g.*, *Corrigan v. Domestic Linen Supply Co.*,

---

[5]    In *In re A2P SMS Antitrust Litigation*, the court noted that the statement in *Quillon* relied upon here by Kiran was made "without analysis." 2014 U.S. Dist. LEXIS 74062 at *30. Moreover, that statement was *dicta,* as it had no bearing on the Third Circuit's decision that the class action waiver was enforceable.

2012 WL 2977262, at *4 (N.D. Ill. July 20, 2012) ("It is the job of the courts to interpret what parties to a contract have agreed upon, and this includes whether the parties agreed to class arbitration."); *Safra Nat'l Bank of New York v. Penfold Inv. Trading, Ltd.*, 2011 WL 1672467, at *3 (S.D.N.Y. Apr. 20, 2011) ("the availability of class arbitration is a gateway issue to be decided by the courts"); *Mork v. Loram Maintenance of Way, Inc.*, 844 F. Supp. 2d 950, 953 (D. Minn. 2012) ("[T]he question of whether arbitration can proceed on a collective basis is appropriate for judicial determination...."); *Eshagh v. Terminix Int'l Co. L.P.*, 2012 WL 1669416 at *10 (E.D. Cal. May 11, 2012) (court compelled individual arbitration, and rejected plaintiff's arguments that arbitrator should decide if contract authorized class arbitration); *Goodale v. George S. May Intern. Co.*, 2011 WL 1337349, at *2 (N.D. Ill. April 5, 2011) (rejecting plaintiffs' argument that the arbitrator should determine if the agreement authorized class arbitration).

## II. The Parties' Arbitration Agreements Do Not "Clearly and Unmistakably" Provide For The Arbitrator To Decide Class Arbitrability

As demonstrated above and in 99 Restaurants' opening brief, class arbitrability is a gateway issue that is presumptively reserved for a court, not an arbitrator, to decide. Although parties can agree to delegate gateway issues of arbitrability to an arbitrator, the Supreme Court has repeatedly held that the standard of proof for such an agreement is very stringent: "Unless the parties

clearly and unmistakably provide otherwise, the question of whether the parties

agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T*

*Technologies Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)

(emphasis added). *Accord First Options of Chicago*, 514 U.S. at 944 ("Courts

should not assume that the parties agreed to arbitrate arbitrability unless there is

'clea[r] and unmistakabl[e] evidence that they did so."); *Rent-A-Center, West Inc.*

*v. Jackson*, 561 U.S. 63, 69 n.1 (2010) (same); *Howsam*, 537 U.S. at 83 (same).

   In *First Options of Chicago,* the Supreme Court explained why it

requires "clear and unmistakable evidence" to overcome the presumption that

courts, not arbitrators, should decide "gateway disputes" concerning arbitrability:

> [G]iven the principle that a party can be forced to
> arbitrate only those issues it specifically has agreed to
> submit to arbitration, one can understand why courts
> might hesitate to interpret silence or ambiguity on the
> 'who should decide arbitrability' point as giving the
> arbitrators that power, for doing so might too often force
> unwilling parties to arbitrate a matter they reasonably
> would have thought a judge, not an arbitrator, would
> decide.

514 U.S. at 945 (emphasis added).

   The "clear and unmistakable evidence" requirement has been

characterized by the Supreme Court as a "heightened standard" of proof. *Rent-A-*

*Center*, 561 U.S. at 69 n.1 *Accord Ehleiter v. Grapetree Shores Inc.*, 482 F.3d 207,

221 (3d Cir. 2007) (describing this test as "onerous"). Significantly, **Kiran's brief**

**makes absolutely no mention of this important "clear and unmistakable" evidence requirement**.  That omission is very telling, as Kiran is unable to point to <u>any</u> evidence, much less the required "clear and unmistakable evidence," that the parties here agreed that an arbitrator should decide the gateway issue of class arbitrability.  *See Reed Elsevier*, 734 F.3d at 599 (agreement did not "clearly and unmistakably assign to an arbitrator the question whether the agreement permits class arbitration.  Instead it does not mention classwide arbitration at all.")

        Neither of the parties' arbitration agreements contains a "delegation" provision such as that involved in *Rent-A-Center*.[6]  Kiran instead argues that the parties' agreement to arbitrate "any and all disputes" between them reflects their purported mutual consent to have an arbitrator decide if class arbitration is permitted by their arbitration agreements.  (Kiran Br. at p. 20).  However, Kiran fails to cite <u>any</u> cases in support of her argument.  That is hardly surprising, as the boilerplate "any and all disputes" arbitration clause is hardly sufficient to satisfy the "clear and unmistakable evidence" test mandated by the Supreme Court.

---

[6]     As explained by the Supreme Court, a delegation provision "is an agreement to arbitrate threshold issues concerning the arbitration agreement."  561 U.S. at 68.

The decision in *Riley Manufacturing Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779-80 (10th Cir. 1998) is directly on point and rejected an argument identical to that made here by Kiran:

> Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so.
>
> *    *    *
>
> [Al]though the arbitration clause in the Manufacturing Agreement is broadly written, referring to 'any and all disputes arising out of or relating to' the contract, there is no hint in the text of the clause or elsewhere in the contract that the parties expressed a specific intent to submit to an arbitrator the question whether an agreement to arbitrate exists or remained in existence after the Settlement Agreement.
>
> *    *    *
>
> We find no 'clear and unmistakable evidence' within the four corners of the Manufacturing Agreement that the parties intended to submit the question of whether an agreement to arbitrate exists to an arbitrator.

*Accord Reed Elsevier*, 734 F.3d at 599 (fact that agreement provided for arbitration of "any" controversy arising out of customer's Order did not constitute "clear and unmistakable evidence" that parties intended for arbitrators to decide class arbitrability; "given the total absence of any reference to classwide arbitration in this clause, the agreement here can just as easily be read to speak only to issues related to bilateral arbitration.  Thus, at best, the agreement is silent or ambiguous

as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts.")

Accepting Kiran's argument that the mere use of a standard "any and all disputes" arbitration clause overcomes the presumption that the gateway issue of class arbitrability should be decided by courts rather than arbitrators would eviscerate the stringent "clear and unmistakable evidence" test that the Supreme Court has emphasized time and again. Indeed, given the widespread prevalence of similar "any and all disputes" arbitration clauses, acceptance of Kiran's argument would essentially mean that <u>all</u> gateway issues, not just class arbitrability, would be reserved for decision by arbitrators. That would completely reverse the longstanding presumption that questions of arbitrability are for courts to decide.

Just as Kiran has not cited <u>any</u> cases in support of her argument that the "any and all disputes" arbitration clause constitutes "clear and unmistakable evidence" of the parties' agreement to have an arbitrator decide the gateway issue of class arbitrability, so too has she failed to cite <u>any</u> cases supporting her fallback argument that such evidence is provided by the parties' agreement to proceed under the AAA's National Rules for the Resolution of Employment Disputes. (Kiran Br. at p. 20).

Kiran has grossly mischaracterized the AAA Rules when she claims that they "expressly provide than [sic] an arbitrator will decide class arbitrability."

(Kiran Br. at p. 5). The Rules say <u>no</u> such <u>thing</u>. As discussed in 99 Restaurants'

opening brief (p. 25), <u>nowhere</u> in either the AAA Employment Rules or

Supplementary Rules does it state that the parties agree to have the arbitrator

decide the gateway issue of class arbitrability. Moreover, as discussed previously,

the Sixth Circuit held in *Reed Elsevier* that class arbitrability was presumptively

for the courts to decide, and it rejected the exact same argument based on the AAA

Rules that Kiran makes here.[7] 734 F.3d at 599-600.

## III.     The Parties Did Not Agree to Arbitrate on a Class Basis

The Supreme Court has repeatedly stressed that "a party may not be

compelled under the FAA to submit to class arbitration unless there is a contractual

basis for concluding that the party *agreed* to do so." *Stolt-Nielsen*, 559 U.S. at 684

(italics in original). Kiran has contrived myriad arguments in support of her claim

that the parties' arbitration agreements permit class arbitration, but none of them

can withstand scrutiny.

As demonstrated in 99 Restaurants' opening brief (pp. 5-7, 30-31), the

arbitration agreements, Application for Employment and ADR Booklet make no

reference to class arbitration and contain no language reflecting the parties' mutual

---

[7]     Rule 3 of the AAA Supplementary Rules states: "In construing the
applicable arbitration clause, the arbitrator shall not consider the existence of
these Supplementary Rules, or any other AAA rules, to be a factor either in
favor of or against permitting the arbitration to proceed on a class basis."
(App. 83).

intent to allow the employee to initiate arbitration on behalf of anyone but herself. To the contrary, these documents repeatedly and consistently use only personal pronouns, evidencing the parties' intent to arbitrate solely on a bilateral basis. As discussed previously, courts have held that such use of personal pronouns demonstrates an intent to arbitrate bilaterally, not on a class basis. *Kinecta Alternative Financial Solutions, Inc. v. Superior Court*, 205 Cal. App. 4th 506, 140 Cal. Rptr. 3d 347 (2012) and *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 114 Cal. Rptr. 3d 198 (2012). Significantly, Kiran's brief does not even mention these cases, much less does it successfully distinguish them.

Nor does Kiran cite any cases supporting her untenable claim that the repeated use of personal pronouns in an arbitration agreement has no bearing on the determination of whether the parties intended to permit class arbitration, and is merely a "drafting convenience." (Kiran Br. at pp. 6, 31).

Kiran also argues that "ambiguities or uncertainties in an agreement are to be resolved against the drafter." (Kiran Br. at p. 26). But there are no "ambiguities or uncertainties" in the parties' agreements – the language is clear, and the parties' intent to allow only bilateral arbitration is manifest. It is well-established that "[t]he mere fact that the parties disagree with respect to the interpretation of the agreement does not make the agreement ambiguous." *Colorio v. Marx,* 72 Mass.App.Ct. 382, 892 N.E.2d 356, 362 (2008). *Accord American*

*Commercial Finance Corp. v. Seneca Ins. Co.,* 66 Mass.App. Ct. 830, 850 N.E.2d 1114, 1116 (2006) ("an ambiguity does not exist solely because there is a conflicting interpretation between parties.").

Kiran has also argued that 99 Restaurants' supposed implicit consent to authorize class arbitration can be divined from its agreement to arbitrate "any and all" disputes arising out of the employee's employment. However, the term "any" is used specifically in conjunction with controversies or disputes arising out of **"my"** "compensation, employment or termination of employment," and the term "any and all" is used specifically in conjunction with claims or disputes that the **"Employee"** or **"team member"** may have against 99 Restaurants.[8] (Add. 5-7) (emphasis added). Kiran's efforts to read the words "my," the "Employee" and the "team member" out of these sentences[9] should be rejected. *See, e.g., Gustafson v.*

---

[8]  It is well established that "[t]he words of a contract must be considered in the context of the entire contract rather than in isolation." *Brigade Leveraged Capital Structures Fund LTD v. Pimco Income Strategy Fund*, 466 Mass. 368, 995 N.E.2d 64, 69 (2013).

[9]  "I, the undersigned party, hereby agree to submit any controversy or dispute arising out of or in connection with **my** compensation, employment or termination of employment… to mediation and/or arbitration." (Add. 5) (emphasis added)

*         *         *

"Employee and Ninety Nine mutually agree that any and all claims or disputes **Employee** may have now or in the future with or against Ninety Nine… may be heard by a neutral mediator…" (Add. 5) (emphasis added)

*Wachusett Regional School District*, 64 Mass. App. Ct. 802, 836 N.E.2d 1097,

1107 n. 7 (2005) ("every word and phrase of a contract should, if possible, be

given meaning, and… none should be treated as surplusage if any other

construction is rationally possible").

      Highly instructive here is *Smith v. BT Conferencing, Inc.*, 2013 WL

5937313 at *9-10 (S.D. Ohio Nov. 5, 2013):

> Smith asserts that the term 'any dispute…. arising out of
> or relating to my employment' in the Arbitration Clause
> requires that he be permitted to arbitrate on a class basis.
> This argument is unavailing… [T]he Arbitration Clause
> refers to disputes arising out of 'my' employment, and
> not to disputes arising out of the employment of others.
> To permit others' disputes to be arbitrated would require
> an unacceptable interpretation of the plain language of
> the Arbitration Clause.  (emphasis added)

*Accord Reed Elsevier,* 2012 U.S. Dist. LEXIS 23947 at *28-29 ("The arbitration

provisions provide that 'any controversy… arising out of or in connection with *this*

*Order (or this Agreement)*' shall be resolved through arbitration subject to the

AAA Commercial Rules.  Thus, the phrase 'any controversy' is limited by the

quoted language that follows") (italics in original).

      It is readily apparent that the arbitration agreements broadly

encompass "any and all" substantive claims that the employee may wish to assert

on behalf of himself or herself; they do not empower the employee to assert claims

on behalf of anyone else.

Arguments identical to that made here by Kiran have repeatedly been rejected.  For instance, in *Stolt-Nielsen*, the arbitration clause encompassed "any dispute" arising from the charter party agreement.  559 U.S. at 667.  The arbitration panel relied on the "breadth" of that language in finding that class arbitration was warranted.  *Id.* at 676.  However, the Court deemed it insufficient to authorize class arbitration.  *Id.*  Justice Ginsburg's dissenting opinion, like the arbitration panel, took the position that the broad "any dispute" language supported class arbitration, but acknowledged that, under the majority's ruling, "[t]he breadth of the arbitration clause… will not do" to demonstrate defendant's consent to class arbitration.  *Id.* at 697.  (Ginsburg, J., dissenting).

Similarly, in *Reed v. Metropolitan Univ.*, 681 F.3d 630 (5th Cir. 2012), *abrogated in part on other grounds*, *Oxford Health Plans v. Sutter*, 133 S. Ct. 2064 (2013), the Fifth Circuit held that the use of an "any dispute" clause did not evidence the parties' intent to allow class arbitration.  The Court noted that "[t]he 'any dispute' clause is a standard provision that may be found, in one form or another, in many arbitration agreements… On its face, the 'any dispute' clause merely reflects an agreement between the parties to arbitrate their dispute."  681 F.3d at 642.  The Court held that "[t]his clause is therefore not a valid contractual basis upon which to conclude that the parties agreed to classwide arbitration."  *Id.*

at 643.[10] *Accord Parvataneni v. E\*Trade Financial Corp.*, 967 F.Supp.2d 1298, 1302 (N.D. Cal. 2013) (rejecting plaintiff's argument that clause requiring arbitration of "any dispute or claim" supported class arbitration); *Smith v. BT Conferencing,* 2013 WL 5937313 at \*9-10 (same); *Anwar v. Fairfield Greenwich Limited*, 950 F.Supp.2d 633, 636 (S.D.N.Y. 2013) ("an agreement to arbitrate 'any and all disputes, controversies, or claims arising out of' that agreement does not in and of itself authorize class arbitration if there is 'no provision in the contract which contemplates class arbitration.'").[11] *See also* Christopher R. Drahozal & Peter B. Rutledge, *Contract and Procedure*, 94 Marq.L.Rev. 1103, 1155 (2011) (stating that a class arbitration award based upon an "any dispute" clause would "not satisfy *Stolt-Nielsen*," and "[a] general arbitration clause, according to the

---

[10]    The standard for vacatur of an arbitrator's decision applied in *Reed* is no longer good law following *Oxford Health's* holding that vacatur is not authorized even if the arbitrator committed "serious errors" in construing the parties' agreement. 133 S. Ct. at 2068. Nevertheless, the *Reed* court's analysis of the arbitration agreement was <u>not</u> rejected by the Supreme Court, and courts have continued to cite it with approval. *See, e.g., D.R. Horton v. NLRB*, 737 F.3d 344, 357 (5th Cir. 2013); *DeBose v. Smith & Wollensky Rest. Group, Inc*., 2013 WL 5487939 at \*2 (S.D. Tex. Sept. 30, 2013) ("Petitioner argues that the Supreme Court in *Oxford Health* abrogated the Fifth Circuit's decision in *Reed*… The Supreme Court in *Oxford Health* did not, however, overrule the Fifth Circuit's decision in *Reed* on its merits.").

[11]    Kiran cites *Smith & Wollensky Restaurant Group v. Passow*, 831 F.Supp.2d 390, 392 (D. Mass. 2011), but the precedential value of that decision is *de minimis*. It involved review of an arbitrator's decision under the extremely deferential standard of Section 10(a)(4) of the FAA.

*Stolt-Nielsen* Court, does not authorize class arbitration because class arbitration differs too much from individual arbitration").

Accepting Kiran's far-fetched argument that the mere inclusion of the customary "any dispute" language in an agreement suffices to demonstrate an intent to allow class arbitration would turn on its head the *Stolt-Nielsen* holding that parties do not consent to class arbitration "by simply agreeing to submit their disputes to an arbitrator." 559 U.S. at 685. That is because, as noted by the Fifth Circuit in *Reed*, such "any dispute" language is "standard" in virtually every arbitration agreement.[12] 681 F.3d at 642.

Kiran also argues that the parties' implicit intent to allow class arbitration is demonstrated by the fact that the ADR Booklet states that "[t]he arbitrator can award everything a judge or jury could award you in court." (Kiran Br. at p. 25). However, the use of the all-important personal pronoun "you" in that sentence makes pellucidly clear yet again that only bilateral arbitration was intended by 99 Restaurants.

---

[12]    The AAA suggests a clause referring to "any controversy or claim," and JAMS's suggested clause refers to "any dispute, claim or controversy." (AAA: *Drafting Dispute Resolution Clauses: A Practical Guide*, http://www.adr.org/aaa/ShowPDF?doc=ADRSTG_002540 at 10 (2013); JAMS: *JAMS Clause Workbook-Standard Clauses*, available at www.jamsadr.com/clauses/#Standard). To interpret such form terminology as manifesting an intent to permit class arbitration would mean that virtually all "silent" arbitration agreements permit class arbitration.

Moreover, the fact that the arbitrator may award any remedies that could be awarded in court cannot reasonably be construed to authorize class arbitration. Class arbitration is not a "remedy." *See, e.g., D.R. Horton*, 737 F.3d at 357 ("while a class action may lead to certain types of remedies or relief, a class action is not *itself* a remedy") (emphasis in original). Thus, the "any remedy" phrase in an arbitration agreement "merely allows the arbitrator to grant any 'remedy available from a court under the law,' says nothing whatsoever about class arbitration, and does not constitute an 'agree[ment] to authorize class arbitration.'" *Reed*, 681 F.3d at 643.

Kiran also argues that under Massachusetts law, "employees have a *substantive right* to bring wage claims on a class-wide basis." (Kiran Br. at p. 26) (italics in original). But she fails to acknowledge that, in the very same decision she cites, the Court rejected class arbitration and expressly held that class arbitration of Massachusetts wage claims requires proof of mutual consent:

> **[F]ollowing *Concepcion*, it is of no avail that a particular State statute like the Wage Act provides for a substantive right to bring a class proceeding**… This is so because the 'changes brought about by the shift from bilateral arbitration to class-action arbitration' are 'fundamental,'… and therefore, '[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA'… **It follows that, because nonconsensual class arbitration is forbidden by *Stolt-Nielsen* and *Concepcion*, enforcement of a substantive State statutory right to a class proceeding would be tantamount**

> **to requiring a judicial forum for a particular type of dispute, a result the FAA clearly prohibits.**

*Machado v. System4 LLC,* 465 Mass. 508, 989 N.E.2d 464, 470-71 (2013) (emphasis added) (citations omitted).

Moreover, "numerous courts have held that there is no substantive right to proceed collectively under the FLSA." *D.R. Horton*, 737 F.3d at 357. *Accord Walthour v. Chipio Windshield Repair*, 745 F.3d 1326, 1336 (11th Cir. 2014); *Sutherland v. Ernst & Young, LLP,* 726 F.3d 290, 296-97 & n. 6 (2d Cir. 2013); *Carter v. Countrywide Credit Indus., Inc*., 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc*., 303 F.3d 496, 506 (4th Cir. 2002); *Kuehner v. Dickinson & Co*., 84 F.3d 316, 319-20 (9th Cir. 1996).

Finally, Kiran's argument (p. 27) that "[i]nterpreting the arbitration agreement to permit class arbitrations is also supported by industry custom" is just as unfounded as the preceding arguments discussed above. Kiran's contention that "custom and usage" is "relevant to determining the parties' intent when an express agreement is ambiguous" (Kiran Br. at p. 27) is wholly inapposite here. *See, e.g., Somerset Savings Bank v. Chicago Title Ins. Co*., 420 Mass. 422, 427, 649 N.E.2d 1123, 1127 (1995) ("Absent ambiguous contractual language in the policy, custom and practice evidence cannot be used to vary the provisions of the policy").

Kiran points to the "prevalence of class wage claims" and notes that 99 Restaurants' SEC filings stated that other restaurant companies had been

subjected to class action lawsuits.  (Kiran Br. at pp. 28, 30).  However, that fact greatly <u>undermines</u>, rather than supports, Kiran's illogical claim that 99 Restaurants intended to allow class arbitration when it drafted the agreements at issue.  Since class arbitration is tantamount to "bet[ting] the company with no effective means of review" (*Concepcion*, 131 S. Ct. at 1752), it is surely counterintuitive to suggest that 99 Restaurants would have drafted an arbitration agreement intentionally subjecting itself to a known and very substantial risk.[13] *See Stolt-Nielsen*, 559 U.S. at 685 (there is "reason to doubt" a company's intent to agree to class arbitration).

In sum, notwithstanding Kiran's strained efforts to distort the ordinary meaning of the plain language utilized in the arbitration agreements, job application form and ADR Booklet, it is readily apparent that the parties agreed only to bilateral arbitration, not class arbitration.  If 99 Restaurants had actually intended to authorize class arbitration in the agreements it drafted, which defies common sense for the reasons outlined at length in *Stolt-Nielsen* and *Concepcion*, there were numerous ways that such intent could easily have been made clear.  The

---

[13]  Contrary to Kiran's argument (Kiran Br. at p. 25), 99 Restaurants' consent to class arbitration cannot be inferred from the fact that the agreement does not contain a class action waiver.  *See Stolt-Nielsen*, 559 U.S. at 684; *Fantastic Sams*, 683 F.3d at 22.

arbitration agreements do not contain **any** language evidencing the parties' mutual intent to permit class arbitration.

## CONCLUSION

For the reasons set forth above and in 99 Restaurants' prior brief, this Court should hold that the availability of class arbitration is a gateway question of arbitrability for courts to decide and that the parties' agreements only authorize the arbitration of Kiran's individual claims.

Respectfully submitted,

/s/ Burt M. Rublin
Burt M. Rublin
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Phone - 215.864.8116
Fax - 215.864.9783
rublin@ballardspahr.com

*Attorney for Petitioner-Appellant,*
*99 Restaurants, LLC*

**OF COUNSEL:**

Michael Mankes
**LITTLER MENDELSON, P.C.**
One International Place, Suite 2700
Boston, MA 02110
Phone - 617.378.6000
Fax - 617.737.0052
mmankes@littler.com

29

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because it contains 6,947 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B) (iii).

This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 word processing software in 14 point Times New Roman font.

Dated:  July 10, 2014                    /s/ Burt M. Rublin
                                         Burt M. Rublin

## CERTIFICATE OF SERVICE

I hereby certify that, on July 10, 2014, I electronically filed the

foregoing Reply Brief of Petitioner-Appellant 99 Restaurants, LLC with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing

to the e-mail addresses of the following counsel for Respondent-Appellee:

> Stephen S. Churchill
> Hillary A. Schwab
> Brant Casavant
> FAIR WORK PC
> 192 South Street
> Suite 450
> Boston, MA 02111

/s/ Burt M. Rublin
Burt M. Rublin